**Shirley MILLER, Appellant**

**v.**

**GO HIRE EMPLOYMENT DEVELOPMENT, INC.; Hon. William Rudloff, Administrative Law Judge; and Workers' Compensaton Board, Appellees**

**No. 2014–CA–000379–WC**

Court of Appeals of Kentucky.

Rendered: October 9, 2015; 10:00 A.M.

---

19. Op. at 615.

Brief for Appellant: McKinnley Morgan, London, Kentucky.

Brief for Appellee, Go Hire Employment Development, Inc.: W. Barry Lewis, Hazard, Kentucky.

1. Kentucky Revised Statutes.

2. American Medical Association, *Guides to the Evaluation of Permanent Impairment, Fifth*

BEFORE: KRAMER, J. LAMBERT, AND NICKELL, JUDGES.

## OPINION

NICKELL, JUDGE:

The appellant, Shirley Miller (Miller), filed a Form 101 on March 28, 2013, alleging injuries to her chest, back, right arm and both legs as the result of a work-related motor vehicle accident (MVA) on July 3, 2012, sustained while in the course of delivering lunches in a company van. At the time of the accident, Miller was employed by appellee, Go Hire Employment Development, Inc. (Go Hire), as a cook at the Caney Creek Rehabilitation Center, where her duties included preparation and delivery of food.

On September 4, 2013, the administrative law judge (ALJ) entered an opinion and order finding all of Miller's alleged injuries to be causally related to the work-related accident. The ALJ awarded permanent partial disability (PPD) income benefits pursuant to KRS[1] 342.730 based upon an 11% whole person impairment rating pursuant to the AMA *Guides*,[2] encompassing a 5% impairment rating attributable to an uncontested back condition and a 6% impairment rating attributable to a contested carpal tunnel syndrome (CTS). The ALJ also awarded past and future medical benefits incurred for the cure and relief from the effects of Miller's various injuries, including the contested CTS. On September 30, 2013, the ALJ overruled Go Hire's petition for reconsideration.

In its appeal to the Workers' Compensation Board (Board), Go Hire challenged the ALJ's award of income and medical benefits for Miller's CTS. Go Hire assert-

*Edition*, Linda Cocchearella, M.D., Gunnar B.J. Anderson, M.D., PhD., eds, (AMA Press, Nov. 2000).

ed no substantial evidence supported a finding of work-related causation regarding the CTS, and noted the ALJ had failed to provide any specific factual basis supporting the award as requested in its petition for reconsideration.

In an opinion entered on January 31, 2014, the Board reversed the ALJ's award of PPD income benefits to the extent it encompassed the 6% impairment rating attributable to Miller's contested CTS, and remanded for the ALJ to recalculate Miller's award based solely upon the remaining 5% impairment rating assessed for her uncontested low back injury. In doing so, the Board held the 6% impairment rating assessed by Dr. Arthur Hughes in relation to his examination of Miller on April 23, 2013, could not be considered substantial evidence to support an award of PPD income benefits. The Board reasoned the ALJ had held Miller had not reached maximum medical improvement (MMI) until July 31, 2013, when examined by Dr. David Jenkinson, and an impairment rating is improper under the AMA *Guides* until the clinical findings indicate the medical condition is static and well-stabilized with no further improvement or deterioration anticipated, thereby having reached MMI.[3] In addition, the Board vacated the ALJ's award of medical benefits relating to Miller's CTS. The Board remanded the matter for further findings by the ALJ—with specific citation to supporting evidence—regarding whether the contested CTS condition is work-related; permanent or temporary; and entitled Miller to an award of any medical benefits.[4]

Miller now appeals. Upon careful review of the record and arguments, the Board's opinion of January 31, 2014, is affirmed in part and reversed in part, and the matter is remanded to the ALJ for further specific findings consistent with this Opinion.

## FACTUAL AND PROCEDURAL HISTORY

The relevant facts and posture of this case were summarized by the Board as follows:

In the course of delivering lunches in a company van on July 3, 2012, Miller was involved in a motor vehicle accident ("MVA") which she alleged resulted in injuries to her chest, back, right arm, and both legs. As previously noted, there is no dispute the MVA caused a low back injury resulting in a compensable 5% impairment. At the time of the injury, Miller was working as a cook at Caney Creek Rehabilitation Center which entailed preparing and delivering the food.

Miller testified she was driving to Go Hire's Breathitt County [C]enter when a vehicle pulled onto the highway and struck the right side of the van. Upon impact, she swerved hitting a building and a pole located beside the building. Miller testified the right fender and the driver's door had extensive damage. The seatbelt cut into her shoulder and her glasses were knocked off. Miller was taken by ambulance to the hospital in Breathitt County. [FN] She testified her back, neck, leg, and chest hurt and her right arm was numb.

[FN] The Kentucky River Medical Center.

During her June 24, 2013, deposition, Miller testified she was still having pain

---

3. Section 2.4, AMA *Guides*.

4. Though not an issue on appeal, the Board also raised, *sua sponte*, the issue of whether the two multiplier specified in KRS

342.730(1)(c)2 applied to Miller's award, and directed the ALJ to include language regarding its applicability on remand.

and problems in her lower back and legs. As to whether she injured any other body parts, Miller provided the following testimony:

Q: Did you injure any other parts of your body such as your neck or your upper back?

A: No.

Q: Did you injure your arms or your wrist in any way?

A: No.

Q: Do you have any pain or symptoms in your neck or your arms?

A: No.

Q: Do you have any pain or symptoms in your elbows?

A: No.

Q: Do you have any pain or symptoms in your wrists?

A: No.

Q: Any numbness or tingling in your arms?

A: No.

Miller missed no work as a result of the accident. After the Caney Creek Rehabilitation Center closed on March 30, 2013, in April she began assisting clients at the Go Hire centers in Breathitt and Owsley Counties. The job to which she transferred is much lighter duty and does not involve any manual labor, bending, lifting, or carrying. Miller testified she is working full-time without any restrictions on her activities. Miller acknowledged she has diabetes and a thyroid disorder.

At the August 29, 2013, hearing, Miller testified she continues to experience back and leg pain. On direct, Miller provided the following testimony relative to her right wrist problems:

Q: Are you experiencing problems with your right wrist?

A: In my hand here and then there's—there's a knot right through there.

Q: And, did—is—is the car accident where it began? Had you noticed it before, Shirley?

A: No, I haven't noticed it before the accident—uh-uh.

On cross-examination, Miller testified as follows:

Q: Now, as to your wrist condition, you—you did not injure your right wrist in the accident did you?

A: This one—the ambulance driver asked me was I hurt and I told him both of my hands was [sic] hurting and numb and both of my legs were numb.

Q: Did you tell any doctor that you went to see after the accident that you had injured your right wrist?

A: I told him that both of my hands were numb, as far [sic] I could remember, and I told him both of my legs were numb.

Q: Okay—do you remember giving a discovery deposition in this case back at your attorney's office on June 24, 2013?

A: If I remember?

Q: Yes, ma'am.

A: It's been such—way back I can't—I do know my hand hurts.

Q: Okay.

A: And, as far as I can remember I know my hand was hurting. I also had a lot of numbness and tingling.

[text omitted]

Q: Ms. Miller, I asked you the following question, "Did you injure your arms or your wrists in any way?" Answer, "No." Do you remember giving that testimony?

A: Yes, I believe I do.

Q: Okay.

A: But I don't remember that far back about hurting. I do know I remember that I was numb and had tingling in my hands and arms and legs.

[text omitted]

A: My memory is not good.

Q: Okay.

A: Especially that morning. I was shaken up.

[text omitted]

Q: Ms. Miller if you could read along.

A: Uh-huh.

Q: I asked you the question, "Do you have any pain or symptoms in your wrists?" Answer, "No." Do you remember giving that testimony?

A: No, I don't.

Q: You don't recall it?

A: No.

Q: Question two forty-nine I asked you, "Any numbness or tingling in your arms?" Answer, "No."

A: Yes, I do have numbness and tingling in my feet, and hands, and legs.

Significantly, Miller testified her current average weekly wage ("AWW") is the same as it was on July 3, 2012, the date of injury.

Miller introduced the Form 107 completed by Dr. Arthur Hughes on April 23, 2013. He noted Miller stated she was transported by ambulance to the hospital and was experiencing low back pain, and numbness in her arms, hands, and leg. With respect to symptoms in her hands, Dr. Hughes noted as follows:

> Her hands were numb at first but she no longer has much problem here. Though she does note some tingling in both hands and the right forearm and hands bother her when she drives but do not awaken her. Her hands were okay prior to the accident. She has tended to drop things with either hand.

After conducting a records review, performing a physical examination, and reviewing MRIs of the cervical and lumbar spine, Dr. Hughes diagnosed right carpal tunnel syndrome.[FN]

> [FN] Dr. Hughes also diagnosed: 1) Lower back w/o radiculopathy status post motor vehicle accident; 2) Paresthesias of both legs, mechanism uncertain.

With respect to causation, he noted "the symptoms of right carpal tunnel syndrome accompanied by physical findings of such were not present prior to the MVA and had been present since." Pursuant to the 5th Edition of the American Medical Association, *Guides to Evaluating Permanent Impairment* ("AMA *Guides*"), Dr. Hughes assessed a 6% impairment for right carpal tunnel syndrome attributable to the MVA. He opined Miller had no active impairment prior to the injury. With respect to the date maximum medical improvement ("MMI") was reached, Dr. Hughes stated as follows:

> She had not yet reached maximum medical improvement as she has had no treatment for the right carpal tunnel syndrome, though this is mild. If no further treatment for this is approved, then she is at maximum medical improvement as of this date.

Dr. Hughes believed Miller retained the capacity to perform the type of work she performed at the time of the injury. He suggested Miller "avoid repetitive right wrist motion and could use a wrist brace at times if needed." Dr. Hughes provided no other restrictions.

Go Hire introduced the July 31, 2013, report of Dr. David Jenkinson. Upon

review of the July 3, 2012, records of Kentucky River Medical Center Emergency Department, Dr. Jenkinson noted Miller apparently reported her arms and elbows were sore and she just wanted to go to the hospital to be checked out. Miller complained of chest and right elbow pain. Pursuant to the AMA *Guides*, Dr. Jenkinson assessed a 5% impairment for the low back injury. Concerning Dr. Hughes' diagnosis of carpal tunnel syndrome and the impairment rating, Dr. Jenkinson stated as follows:

> I am puzzled by this diagnosis and the impairment rating. At this current evaluation Ms. Miller did not describe any symptoms in her right hand that would be consistent with carpal tunnel syndrome. She did not complain of any symptoms in the right forearm or hand and I found nothing in the medical records to suggest that she had a carpal tunnel syndrome. Carpal Tunnel Syndrome is a chronic compressive neuropathy of the median nerve and would not be caused by a single acute injury unless there was a major trauma to the wrist such as a displaced wrist fracture. I therefore must respectfully disagree with Dr. Hughes in that I find no evidence for carpal tunnel syndrome and therefore no basis for that impairment rating.

Go Hire introduced the August 20, 2013, report of Dr. Russell Travis based upon a review of medical records and imaging studies. With respect to Dr. Hughes' diagnosis of carpal tunnel syndrome, Dr. Travis stated the medical records made no mention "of a suggestion of carpal tunnel syndrome" until Miller was examined by Dr. Hughes. Dr. Travis explained that carpal tunnel syndrome is not caused by trauma unless there was a fracture in the wrist area or bleeding in the carpal tunnel. He found it significant Miller had both a hyperthyroid and diabetic condition. Dr. Travis noted carpal tunnel syndrome is fifteen times more common in people with diabetes than in the general population. He also noted hyperthyroidism has a strong association with carpal tunnel syndrome. Accordingly, Dr. Travis concluded Miller did not suffer an injury to the wrist or hand in the MVA and disagreed with Dr. Hughes' assessment of an impairment rating for carpal tunnel syndrome.

Based on the opinions of Dr. Hughes, the ALJ made the "factual determination" Miller sustained injuries to her back, right arm, and legs as a result of the MVA. In basing the award of income benefits upon an 11% impairment, the ALJ made the following findings of fact and conclusions of law:

> In this case, I make the factual determination that the plaintiff's sworn testimony was very credible and convincing. I also make the factual determination that the medical evidence from Dr. Hughes was credible and persuasive. I note that Dr. Hughes stated that the plaintiff would sustain a permanent whole person impairment of 11% under the AMA *Guides*, Fifth Edition. Dr. Hughes states that the plaintiff had not reached maximum medical improvement. I also make the factual determination that the evidence from Dr. Jenkinson was to the effect that at the time he examined the plaintiff on July 31, 2013 [sic] he found that there was no reason why she should have any work restrictions or limitations due to her July 3, 2012 [sic] work injuries. In other words, according to Dr. Jenkinson, she reached maximum medical improvement on July 31, 2013. I make the factual determination that Dr. Jenkinson's finding that the plain-

tiff had reached maximum medical improvement on July 31, 2013 is credible and convincing. The plaintiff's sworn testimony was that since April 2013 she has received the same pay as she did at the time of her work injuries back in July 2012. Since the plaintiff is now earning the same average weekly wage that she earned at the time of her work injuries and since Dr. Hughes stated that she retains the physical capacity to return to the type of work which she performed at the time of her injuries, I make the determination that the plaintiff is entitled to recover permanent partial disability benefits from the defendant and its workers' compensation insurer based upon an 11% whole person permanent impairment due to her July 3, 2012 [sic] work injuries. I also make the factual determination that the plaintiff is likely to be able to continue earning the wage that equals or exceeds the wage which she had at the time of her injuries for the indefinite future. In other words, based upon the totality of the evidence, both lay and medical, I make the determination that the plaintiff's recovery for permanent partial disability benefits is limited to the 1 multiplier and that she is not entitled to make an enhanced permanent partial disability recovery. Of course, if her physical impairment and occupational disability should worsen, she has the option to move to reopen pursuant to KRS [Kentucky Revised Statute] 342.125.

Go Hire filed a petition for reconsideration requesting further findings of fact regarding the issue of whether the 6% impairment rating for carpal tunnel syndrome is causally related to the MVA. It specifically requested the ALJ to review Miller's deposition testimony previously recited herein. The ALJ overruled the petition for reconsideration stating the opinion and order thoroughly discussed all of the contested issues raised by the parties.

In its subsequent appeal to the Board, Go Hire contended the ALJ's award of income and medical benefits for Miller's CTS were not supported by substantial evidence. Go Hire asserted the ALJ provided insufficient findings of fact upon which any reasonable determination of a work-related permanent CTS could be based. Worse, when requested in its petition for reconsideration to provide additional findings to explain the determination of compensability for Miller's CTS, Go Hire asserts the ALJ provided mere perfunctory form language indicating all evidence had been thoroughly considered, thereby providing no explanation of its factual analysis. In particular, Go Hire argues the ALJ failed to address Miller's deposition testimony indicating she had not injured her wrist, arms or elbows, and had not experienced any associated pain or other related symptoms. Further, Go Hire argued the ALJ failed to resolve apparent inconsistencies between Miller's testimony and Dr. Hughes' opinions, even though the ALJ found both credible.

The Board reversed the ALJ's award of PPD income and medical benefits relative to Miller's contested CTS, and remanded the matter for further findings. This appeal followed.

## STANDARD OF REVIEW

The claimant in a workers' compensation proceeding bears the burden of proving each of the essential elements of any cause of action, including causation. KRS 342.0011(1); *Snawder v. Stice*, 576 S.W.2d 276 (Ky.App.1979). When a claimant successfully carries that burden, the question on appeal is whether substantial

evidence of record supports the ALJ's decision. *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984). "Substantial evidence" is evidence of relevant consequence having the fitness to induce conviction in the minds of reasonable persons. *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367 (Ky.1971).

In rendering a decision, KRS 342.285 grants an ALJ—as fact-finder—sole discretion to determine the quality, character, and substance of the evidence. *Square D Co. v. Tipton,* 862 S.W.2d 308, 309 (Ky.1993). An ALJ may draw reasonable inferences from the evidence, reject any testimony, and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Jackson v. General Refractories Co.,* 581 S.W.2d 10 (Ky.1979); *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15 (Ky.1977); *Magic Coal Co. v. Fox,* 19 S.W.3d 88 (Ky. 2000). In that regard, an ALJ is vested with broad authority to decide questions involving causation. *Dravo Lime Co. v. Eakins,* 156 S.W.3d 283, 288–290 (Ky. 2005).

Although a party may note evidence that would have supported a different outcome than reached by an ALJ, such proof is an inadequate basis for reversal on appeal. *McCloud v. Beth–Elkhorn Corp.,* 514 S.W.2d 46, 47 (Ky.1974). Rather, it must be shown there was no evidence of substantial probative value to support the decision. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986).

Appellate review of an ALJ's decision is limited to a determination of whether the findings made are so unreasonable under the evidence that they must be reversed as a matter of law. *Ira A. Watson Department Store v. Hamilton,* 34 S.W.3d 48, 52 (Ky.2000). When reviewing the ALJ's findings of fact, an appellate tribunal is required to give these findings considerable deference and cannot set them aside unless the evidence compels a contrary finding. *Mosely v. Ford Motor Co.,* 968 S.W.2d 675, 678 (Ky.App.1998). The appellate tribunal may not usurp the ALJ's role as fact-finder by superimposing its own appraisals as to weight and credibility or by noting other conclusions or reasonable inferences that otherwise could have been drawn from the evidence. *Whittaker v. Rowland,* 998 S.W.2d 479, 482 (Ky.1999). If an ALJ's findings of fact are supported by substantial evidence, a finding contrary to the ALJ's findings cannot be sustained. *AK Steel Corp. v. Adkins,* 253 S.W.3d 59, 64 (Ky.2008).

However, regarding questions of law, this Court is bound neither by the decisions of an ALJ or the Board regarding proper interpretation of the law or its application to the facts. In either case, the standard of review is *de novo. Bowerman v. Black Equipment Company,* 297 S.W.3d 858, 866 (Ky.App.2009).

## ANALYSIS

On appeal, Miller argues substantial evidence supports the ALJ's finding of a work-related, permanent right CTS. Thus, Miller argues the Board erred in vacating the ALJ's award of medical benefits for her CTS, and in remanding the matter for the ALJ's reconsideration based on more specific citation to supportive substantial evidence. She also argues the Board erred in reversing the ALJ's award of PPD income benefits relative to that medical condition and precluding consideration of any similar award on remand.

## ALJ'S OPINION ESTABLISHING WORK–RELATED CTS AND AWARDING MEDICAL BENEFITS.

First, Miller argues her own testimony and the medical opinion of Dr.

Hughes—together with the Emergency Room record from the Kentucky River Medical Center chronicling her complaints of right arm symptoms when treated on the day of her work-related motor vehicle accident—represented substantial evidence upon which the ALJ was justified in finding a work-related right CTS. She believes the Board erred in vacating the ALJ's award of benefits relative to that condition and remanding for further findings. Based on our review, however, the Board's decision to vacate the ALJ's conclusion that Miller had sustained a work-related right CTS and was entitled to an award of associated medical benefits had less to do with *whether* substantial evidence supported the award, and more to do with *what* substantial evidence supported such an award.

■■■ In *Whittaker v. Rowland,* 998 S.W.2d 479, 481 (Ky.1999), the Supreme Court of Kentucky held parties to a workers' compensation action are "entitled to a sufficient explanation by the ALJ of the basis for the decision." In *Arnold v. Toyota Motor Mfg.,* 375 S.W.3d 56, 61–62 (Ky.2012), our Supreme Court expounded that workers' compensation litigants are entitled to know the evidentiary basis for an ALJ's findings of fact and conclusions of law, and an ALJ's opinion must summarize the conflicting evidence concerning disputed facts, weigh the evidence to make findings of fact, and determine the legal significance of those findings.

> Only when an opinion summarizes the conflicting evidence accurately and states the evidentiary basis for the ALJ's finding does it enable the Board and reviewing courts to determine in the summary manner contemplated by KRS 342.285(2) whether the finding is supported by substantial evidence and reasonable.

*Id.* (Footnotes omitted.) The parties' understanding of an ALJ's opinion—in addition to appellate review—requires that basic facts supporting any ultimate conclusion be clearly set out. *Bowerman v. Black Equipment Co.,* 297 S.W.3d 858, 866 (Ky.App.2009); *Shields v. Pittsburg and Midway Coal Mining Co.,* 634 S.W.2d 440, 444 (Ky.App.1982).

Here, in vacating and remanding the ALJ's opinion and award of benefits relative to any work-related right CTS, the Board explained:

> We next address the determination regarding the alleged carpal tunnel syndrome and the award of medical benefits for the condition. Even though Miller is not entitled to income benefits, she is entitled to an award of medical benefits if her alleged carpal tunnel syndrome is causally related to the July 3, 2012, MVA. We note the ALJ made no specific finding the MVA caused carpal tunnel syndrome in the right wrist. Rather, he found based on Miller's testimony and the "persuasive medical evidence from Dr. Hughes," Miller sustained injuries to her back, right arm, and legs due to the MVA. Miller's testimony relative to the existence of carpal tunnel syndrome is clearly circumspect. Without question, during her deposition taken two months after she saw Dr. Hughes, Miller denied sustaining an injury to her wrists and hands and that she experienced any symptoms which would support a finding of carpal tunnel syndrome due to the July 3, 2012, MVA. Conversely, Miller's testimony at the hearing and Dr. Hughes' report could constitute substantial evidence in support of a finding she developed carpal tunnel syndrome as a result of the MVA. However, based on the ALJ's findings, we are unable to determine the basis of his determination the MVA caused carpal tunnel syndrome. As noted by Go Hire,

the determination Miller's testimony was very credible and convincing provides no guidance as to what portion of Miller's testimony the ALJ relied upon in determining the MVA caused the carpal tunnel syndrome. Therefore, the ALJ's determination regarding Miller's alleged carpal tunnel syndrome and the award of medical benefits must be vacated.

On remand, the ALJ must provide the specific portions of Miller's testimony he relies upon in determining whether she developed work-related carpal tunnel syndrome. This is essential since in its petition for reconsideration Go Hire requested additional findings of fact regarding the ALJ's determination the carpal tunnel syndrome was causally related to the MVA, and the ALJ provided no additional findings of fact. The ALJ must also consider the fact that at the time Dr. Hughes diagnosed carpal tunnel syndrome, Miller had not attained MMI and also noted her condition was mild. Based on this statement by Dr. Hughes and his conclusion Miller had not reached MMI, if the ALJ determines the carpal tunnel syndrome is work-related, he must also determine whether it is a temporary or permanent condition.

Further, two months and one day after Miller saw Dr. Hughes, she testified she did not injure her arm or wrist, had no pain or symptoms in her wrists, and had no numbness or tingling in her arms. Miller's testimony is consistent with Dr. Jenkinson's July 31, 2013, report in which he noted Miller did not describe any symptoms in her right hand that would be consistent with carpal tunnel syndrome nor did she complain of any symptoms in the right forearm or hand. The ALJ must consider all of the above in determining whether the MVA caused carpal tunnel syndrome in the right hand and, if so, whether the condition is temporary or permanent. In the event the ALJ determines the carpal tunnel syndrome is either temporary or permanent, an award of the appropriate medical benefits is necessary.

We agree Go Hire was entitled to the additional findings specified by the Board. Here, the ALJ's opinion lacked sufficient findings and analysis relative to the award of benefits for a work-related right CTS. Go Hire sought clarification by filing a timely petition for reconsideration. Regrettably, the ALJ's perfunctory denial provided none. Thus, we affirm the Board's determination that the ALJ's opinion and award relative to any work-related right CTS must be vacated and remanded for further consideration. In the event a compensable work-related right CTS is determined, the ALJ shall award appropriate medical benefits.

## ALJ'S AWARDING OF PERMANENT PARTIAL DISABILITY BENEFITS FOR A WORK–RELATED CTS

Second, Miller argues the Board erred in reversing the ALJ's award of PPD income benefits relative to her work-related permanent right CTS and in precluding consideration of any similar award upon remand. We agree, in part.

 Rather than reversing the ALJ's award of PPD income benefits, the Board should have vacated and remanded the matter to the ALJ for further findings based on the same legal analysis pertaining to an award of medical benefits set forth above. The ALJ, as fact finder, must be given an opportunity to decipher the conflicting evidence to determine whether Miller is entitled to an award of PPD income benefits for any work-related CTS in the same fashion any award of medical benefits relating to that condition

must be clearly substantiated and explained. If a compensable work-related CTS is established on remand, the ALJ should not be precluded from awarding appropriate PPD benefits if justified by further factual findings.

In the present case, the Board properly focused on whether Miller had reached MMI relative to her alleged work-related right CTS. However, for reasons stated below, we hold the Board missed the mark in reversing the ALJ's award of PPD income benefits rather than vacating and remanding the matter for further findings and explanation.[5]

■■■ MMI is critical in the context of assessing a "whole person impairment" rating because the AMA *Guides* prohibit physicians from assessing an impairment rating for a medical condition unless the patient has achieved MMI. AMA *Guides*, p. 9. Without a whole person impairment rating—properly assigned pursuant to the AMA *Guides*—an award of PPD *income* benefits is prohibited. KRS 342.730(1)(b); KRS 342.0011(35). In contrast to an award of PPD *income* benefits, an award of *medical* benefits does not require assignment of a permanent impairment rating under the AMA *Guides*. *Kroger v. Ligon*, 338 S.W.3d 269, 273–74 (Ky.2011). "The need for additional treatment does not preclude a finding that a worker is at MMI." *Tokico (USA), Inc. v. Kelly*, 281 S.W.3d 771, 776 (Ky.2009) (citing *W.L. Harper Construction Co., Inc. v. Baker*, 858 S.W.2d 202, 204 (Ky.App.1993)).

Here, Miller was examined by Dr. Hughes on April 23, 2013. Dr. Hughes noted his medical opinions in a Form 107. Dr. Hughes indicated he would assess a 6% whole person impairment rating pursuant to the AMA *Guides* specifically for Miller's right CTS. As to causation, he noted "the symptoms of right CTS accompanied by physical findings of such were not present prior" to the work-related MVA on July 3, 2012, "and had been present since."

Most importantly, in regard to MMI relating to Miller's CTS condition, Dr. Hughes *specifically* opined that she:

> had not yet reached maximum medical improvement as she has had no treatment for the right carpal tunnel syndrome, though this is mild. *If no further treatment for this is approved, then she is at maximum medical improvement as of this date.*

[Emphasis added]. Admittedly, Dr. Hughes then created some confusion by proceeding, as noted by the ALJ, to offer a *generalized* opinion that Miller had not reached MMI. However, the medical opinions expressed in Dr. Hughes' Form 107 addressed not only Miller's right CTS, but also her low back. As a result, Dr. Hughes may reasonably have intended his generalized opinion regarding MMI to pertain specifically to Miller's low back condition, as opposed to her CTS condition. On remand, the ALJ should clarify whether he meant his finding of Miller not having reached MMI until July 31, 2013, to relate to her low back condition, alone, her right CTS, alone, or both. If intended to relate only to her low back condition, the ALJ must clarify if and when Miller reached MMI in regard to her right CTS based on substantial evidence.

When Dr. Hughes assessed the 6% whole person impairment rating pursuant

---

**5.** *Reversal* of a lower court's decision is "[a]n annulling or setting aside" or overturning by an appellate court—establishing a contrary determination to be entered or applied by the trial court; while *vacating* is "[t]o nullify or cancel; make void; invalidate" a lower court's decision—requiring the trial court to reach a new decision on a clean slate. *Black's Law Dictionary, Tenth Edition,* Bryan A. Garner, ed. (Thomson Reuters 2014).

to the AMA *Guides,* he documented, based on the medical history provided by Miller, that she had received no treatment for the right CTS condition. Dr. Hughes clearly conditioned his assessment of the 6% impairment rating on Go Hire's continued denial of recommended treatment for Miller's CTS, without which he concluded Miller should be considered at MMI as of the date of her April 23, 2013, examination. Go Hire has continuously, consistently, and vigorously denied liability for payment of medical or other benefits associated with the contested condition, having submitted Dr. Jenkinson's medical opinion denying even its existence.

Dr. Jenkinson examined Miller on July 31, 2013. Dr. Travis examined Miller on August 20, 2013. Both asserted Miller's medical history contained no suggestion of the contested right CTS condition until she was examined by Dr. Hughes on April 23, 2013. Neither referenced any medical treatment for CTS having been provided prior to their respective examinations of Miller, and neither of their respective resulting medical opinions could reasonably be expected to cause Go Hire to approve such treatment for what they considered to be a non-existent or non-work-related condition.

Thus, when Dr. Hughes' Form 107 is read in context, it appears he simply opined treatment might benefit Miller's CTS—which, importantly, he characterized as being "mild"—but barring provision of such treatment, he considered her to have reached MMI. Stated alternatively—and to borrow terminology from the AMA *Guides*—without treatment, Dr. Hughes opined Miller's contested condition was more likely than not to remain static and stabilized with no further anticipated recovery or deterioration.

Dr. Hughes could not be expected to gaze into a crystal ball to discern whether Go Hire would capitulate and acquiesce to providing recommended treatment it had vigorously denied. However, the record establishes Miller *had not* received treatment at the time Dr. Hughes diagnosed right CTS, and—given the strong contrary opinions expressed by Go Hire's medical examiners—it was unreasonable to expect she would ever be approved for such treatment. Therefore, the ALJ could reasonably interpret Dr. Hughes' conditional opinion to mean Miller *had* reached MMI as of April 23, 2013, when Dr. Hughes conducted his examination—especially since Dr. Hughes characterized Miller's CTS as being merely "mild" and because the need for treatment does not preclude a finding of MMI. *Tokico,* 281 S.W.3d at 776.

Such an inference regarding Dr. Hughes' provisional MMI opinion would be entirely consistent with his assignment of an impairment rating under the AMA *Guides.* Dr. Hughes' *direct action* of assigning a 6% whole person impairment rating could reasonably be understood to confirm the meaning intended for the *indirect words* expressed in his provisional MMI opinion. A reasonable inference arising from Dr. Hughes' assignment of an impairment rating for Miller's CTS would be that the physician knew no treatment had been provided, none would be forthcoming, and without treatment Miller's contested condition would remain unchanged. Without the recommended treatment, Dr. Hughes clearly opined Miller had reached MMI for the contested condition *"as of this date"*—April 23, 2013—being the very date he proceeded to assign the 6% whole person impairment rating under the AMA *Guides.*

With this understanding, Dr. Hughes' assignment of the 6% whole person impairment rating was in accordance with the AMA *Guides*—having arisen from his opinion that Miller had reached MMI

regarding her diagnosed right CTS, and could represent substantial evidence to support an award of PPD income benefits relating to this contested condition. Therefore, if the ALJ on remand provides specific findings supporting a determination that any right CTS is work-related and compensable, the ALJ should not be precluded from determining whether Miller is entitled to an award of appropriate PPD income benefits in addition to an award of medical benefits.

In precluding the ALJ on remand from considering an award of PPD income benefits for Miller's CTS, the Board ignored the foregoing specific—though provisional—opinion of Dr. Hughes that Miller *had* reached MMI for the contested CTS condition as of his examination on April 23, 2013. Instead, the Board focused on the ALJ's subsequent singular, generalized, and unexplained finding that Miller had reached MMI as of her examination by Dr. Jenkinson on July 31, 2013, based on the physician's opinion Miller required no further work restrictions or limitations.

However, unless made in specific reference to Miller's uncontested low back condition, the ALJ's finding of MMI as of July 31, 2013—based on Dr. Jenkinson's report—would be inconsistent with the ALJ's prior finding of a 6% impairment for Miller's CTS—based on Dr. Hughes' report. Moreover, Dr. Jenkinson's assessment of MMI must have related only to Miller's low back condition, since he found "no evidence for carpal tunnel syndrome." Logically, Dr. Jenkinson could not assign MMI for a condition he deemed nonexistent. Here, Dr. Jenkinson agreed with Dr. Hughes in assigning a 5% impairment for Miller's uncontested low back condition, but disagreed with Dr. Hughes' diagnosis of CTS, stating there was "no basis for [Dr. Hughes' 6% impairment rating]." Therefore, the ALJ's finding of MMI as of

July 31, 2013, apparently related solely to Miller's low back condition, and not her contested CTS—but that is a matter for the ALJ to clarify on remand.

 When multiple work-related injuries are alleged, it is imperative that an ALJ's opinion distinguish the condition to which factual findings pertain. An ALJ's discretion to pick and choose from the evidence does not authorize conflicting findings of fact. A witness may be inconsistent, but an ALJ may not, and on review an appellate court must search for consistency in interpreting an ALJ's findings.

## CONCLUSION

For the reasons stated above, the Board's opinion of January 31, 2014, is affirmed in part and reversed in part, and remanded for further findings and clarification consistent with this Opinion.

J. LAMBERT, JUDGE, CONCURS.

KRAMER, JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

KRAMER, JUDGE, CONCURRING IN PART AND DISSENTING IN PART:

The majority has determined that the ALJ's decision regarding Miller's entitlement to PPD should be vacated and reconsidered. They disagree with the Board's opinion that the ALJ should be reversed on this point. However, in my opinion the Board was correct. Accordingly, to this extent, I would affirm.

Shirley Miller submitted her claim for PPD for her right CTS condition to the ALJ for final adjudication. The ALJ found in her favor, relying entirely upon Dr. Hughes' determination that 6% of Miller's overall 11% whole person impairment was attributable to right CTS. As noted by

the majority, however, Dr. Hughes qualified his determination as follows:

[Miller] had not yet reached maximum medical improvement as she has had no treatment for the right carpal tunnel syndrome, though this is mild. *If no further treatment for this is approved,* then she is at maximum medical improvement as of this date.

(Emphasis added.)

When the Board reversed the ALJ on this point, its reasons for doing so were largely based upon the concept of maximal medical improvement, or "MMI"—a medical term of art. According to the AMA *Guides,* 5th Edition, p. 601, MMI is:

[a] condition or state that is well stabilized and unlikely to change substantially in the next year, *with or without medical treatment.* Over time, there may be some change; however, further recovery or deterioration is not anticipated.

(Emphasis added.)

MMI is critical in the context of assessing a "whole person impairment" (WPI) rating, such as the "6%" that Dr. Hughes assessed Miller for her carpal tunnel syndrome. This is because the AMA *Guides* prohibits doctors from assessing any WPI rating for a medical condition unless the medical condition has achieved MMI. *See* AMA *Guides,* 5th Edition, p. 9. A WPI rating, in turn, is a prerequisite to receiving any award of permanent partial disability income benefits. *See* KRS 342.730(1)(b); KRS 342.0011(35).

With that said, the Board analyzed the only evidence offered and relied upon to support that Miller's carpal tunnel syndrome had reached MMI, and it reversed the ALJ on the ground that this evidence was inadequate. Its reasoning was as follows:

Only Drs. Hughes and Jenkinson conducted a physical examination of Miller. Dr. Jenkinson noted Miller voiced no complaints regarding her hand and arm. On the other hand, Dr. Hughes obtained a history from Miller of hand and arm symptoms. Although Dr. Hughes assessed a 6% impairment rating, his impairment rating is not in accordance with the AMA *Guides,* since Dr. Hughes stated and the ALJ expressly found Miller had not attained MMI at the time of Dr. Hughes' examination. In the Form 107, Dr. Hughes opined Miller had not reached MMI since she had received no treatment for the carpal tunnel syndrome. However, he qualified that opinion by stating if further treatment was not approved then Miller was at MMI. The record is silent as to whether Miller received any further treatment of this condition. Thus, the record does not establish if Miller ever attained MMI. This is confirmed by the ALJ's finding that Dr. Hughes stated Miller had not reached MMI.

The most significant finding by the ALJ is that Miller attained MMI on July 31, 2013, when Dr. Jenkinson examined Miller. Consequently, at the time Dr. Hughes examined Miller on April 23, 2013, she had not attained MMI. That being the case, pursuant to the AMA *Guides,* a permanent impairment rating could not and should not have been assessed at the time of Dr. Hughes' examination. Our holding is consistent with the mandates of the AMA *Guides* as it directs as follows:

2.4 When Are Impairment Ratings Performed?

An Impairment should not be considered permanent until the clinical findings indicate that the medical condition is static and well stabilized, often termed the date of maximal medical improvement (MMI). It is under-

stood that an individual's condition is dynamic. Maximal medical improvement refers to a date from which further recovery or deterioration is not anticipated, although over time there may be some expected change. Once an impairment has reached MMI, a permanent impairment rating may be performed. The Guides attempts to take into account all relevant considerations in rating the severity and extent of permanent impairment and its effect on the individual's activities of daily living. [FN]

> [FN] See page 19 of the AMA *Guides.*

Because Dr. Hughes stated Miller was not at MMI, and there is no indication in the record as to whether Miller sought further treatment of her carpal tunnel syndrome, and the ALJ determined MMI was attained on July 31, 2013, Dr. Hughes' 6% impairment rating does not constitute substantial evidence supporting the award of income benefits for carpal tunnel syndrome. As there is no other medical evidence which supports an award of income benefits for carpal tunnel syndrome, the award must be reversed.

The underpinning of the majority's decision to reverse the Board on this point is that Dr. Hughes *was* authorized to assess Miller with a 6% whole person impairment attributable to right CTS because, contrary to the AMA *Guides,* MMI does *not* depend upon whether Miller's right CTS was "well stabilized and unlikely to change substantially in the next year, with or without medical treatment." Rather, the majority has concluded that MMI depends upon whether Miller's employer was willing to volunteer payment for medical treatment that, according to Dr. Hughes, would have improved Miller's condition.

A hypothetical or conditional WPI rating—essentially what Dr. Hughes offered herein—is prohibited by the AMA *Guides* and cannot be relied upon as substantial evidence. *See Czar Coal Corp. v. Jarrell,* Nos. 2007–SC–000233–WC, 2007–SC–000234–WC, 2008 WL 746605 at *4 (Ky. March 20, 2008).[6]

If Miller wished to obligate her employer to pay for the medical treatment she needed in order to reach MMI and secure a valid WPI rating for the purpose of receiving PPD, her proper course of action would have been to have sought an interlocutory determination of her employer's liability and an interlocutory award of medical benefits. *Garno v. Solectron USA,* 329 S.W.3d 301 (Ky.2010). If successful, she could have then held her claim in abeyance until she achieved MMI.

But having submitted her claim for final adjudication based solely upon Dr. Hughes' invalid WPI rating, her evidence, such as it was, simply could not have supported an award of PPD. For this reason, in my view the majority has directed an exercise in futility by asking the ALJ to reconsider and make additional findings of fact regarding Dr. Hughes' opinions; no matter how that evidence is construed, it will never qualify as evidence capable of sustaining an award of PPD.

---

**6.** I find *Jarrell* to be persuasive authority in this case and proper to cite as it fulfills the criteria of Civil Rule (CR) 76.28(4).