RENDERED:  APRIL 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1444-WC

MUHLENBERG COUNTY COAL                                      APPELLANT

PETITION FOR REVIEW OF A DECISION
v.                OF THE WORKERS' COMPENSATION BOARD
ACTION NOS. WC-23-00496, WC-23-00497, AND WC-23-00508

JOSEPH BAIZE; HONORABLE
AMANDA M. PERKINS,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND LAMBERT, JUDGES.

COMBS, JUDGE:  Appellant, Muhlenburg County Coal, appeals from an Opinion

of the Workers' Compensation Board affirming the Administrative Law Judge's

award of benefits in this cumulative trauma claim.  After our review, we affirm.

The Appellee, Joseph Baize (Baize), was employed as an underground

mechanic for the Appellant, Muhlenburg County Coal (MCC).  Baize filed three

workers' compensation claims, which were consolidated before the Administrative Law Judge (ALJ): Claim No. 2023-00496, for a May 21, 2021, injury to the right arm/pectoral muscle; Claim No. 2023-00497, for occupational disease/coal workers' pneumoconiosis (CWP); and Claim No. 2023-00508 for an October 29, 2021, cumulative trauma injury to the neck, back, shoulders, and right knee.[1] The accompanying Form 104 Employment History reflects that Baize worked in the mining industry for approximately ten years.

The only issue before us is the ALJ's award of benefits for Baize's back and neck in Claim No. 2023-00508 -- the cumulative trauma injury claim.[2]

Baize testified both by deposition and at the March 27, 2024, final hearing. The medical evidence was in conflict. He submitted reports from Dr. James Rushing, a chiropractor, and from Dr. John W. Gilbert, who examined Baize at his counsel's request. MCC submitted reports from Dr. Mitchell Harris and Dr. Thomas O'Brien, both of whom evaluated Baize at MCC's request. In addition, MCC deposed Dr. Gilbert and submitted evidence regarding Baize's jujitsu activities. Both parties submitted records from Jackqueline Easler, APRN, Baize's primary care provider.

---

[1] At the final hearing, Baize withdrew the claim for cumulative trauma with respect to his right knee.

[2] The ALJ dismissed both the May 21, 2021, arm/pectoral injury claim and the occupational disease (CWP) claim in their entirety. The ALJ also dismissed the shoulder component of the cumulative trauma injury claim.

On May 22, 2024, the ALJ entered an Opinion, Award, and Order. The ALJ dismissed Baize's claim for the May 21, 2021, right pectoral injury, having been more persuaded by the opinions of MCC's medical experts than those offered by Baize. With respect to the alleged October 29, 2021 cumulative trauma injury claim, the ALJ explained as follows:

> In *Haycraft v. Corhart Refractories*, 544 S.W. 222 (Ky. 1976), the Court held that a cumulative trauma injury could be proven by showing the nature and duration of the work probably aggravated a degenerative condition into an active impairment sooner than would have been the case had the work been less strenuous.
>
> After reviewing the conflicting evidence from D.C. Rushing and Drs. Gilbert, Harris, and O'Brien, I rely on Dr. Gilbert in conjunction with Mr. Baize's credible testimony and D.C. Rushing's report to find Mr. Baize suffered injuries to his back and neck as a result of his repetitive work activities as a miner.
>
> Mr. Baize persuasively explained the physical nature of his job duties, including why he thought his job duties led to his neck and back pain:
>
> > Q: What about your job at Muhlenberg Coal do you think contributed to the issues in your neck?
> >
> > A: Just being bent over. And a lot of times you wouldn't realize where you were at, so you would, like, raise up and you'd smack your head on the top, pop your neck a bunch. I mean, I never, you know, had any -- I never had a lost time accident the whole time I worked. I was very fortunate. But, you know, I didn't -- of course, anybody that

-3-

works down there is going to have wear and tear the whole time.

. . .

Q: Okay. What about your job duties at Muhlenberg do you think contributed to the issues you have with your back?

A: Just the constant lifting and, you know, things. When I'm squatted over and then, you know, when -- of course, when I roof bolted being bent over. And I'm constantly having to -- you know, a lot of times you get back there and you'd have to load your equipment on your pinner and stuff like that. And you're down on your knees lifting, you know, stuff trying to do it at a quick pace. It's just really hard on your back, twisting and stuff like that. And then just, you know, just eats at it over time.

(HT 20:14-24, 25:23-26:10).

. . .

Muhlenberg argues that Mr. Baize's jiu-jitsu practice is the more likely source of his back and neck conditions than his work activities. In support of its argument, it filed videos[3] of Mr. Baize's practice and a website about his jiu-jitsu fights. It also alleges Dr. Gilbert did not have an accurate history of Mr. Baize's jiu-jitsu practice, so, Dr. Gilbert's opinion is not based on substantial evidence.

After reviewing the conflicting evidence, I am not persuaded by its argument. Mr. Baize credibly explained that he did not suffer any injuries to his back or neck

---

[3] It does not appear that those videos were included in the record on appeal to this Court.

practicing jiu-jitsu. Dr. Gilbert also explained that unless Mr. Baize was practicing a physically demanding recreational activity, like football, every day, he did not think that would have caused Mr. Baize's condition. (Gilbert Depo. 11:4-22).

I rely on Dr. Gilbert to find Mr. Baize has a 6% impairment to his neck, and Dr. Harris to find he has a 5% impairment to his back. Dr. Harris' 5% impairment is more persuasive than Dr. Gilbert's 11% impairment because Dr. Harris' impairment is more consistent with Mr. Baize's back symptoms and limitations.

The parties also dispute whether Mr. Baize has the physical capacity to return to his former work in the mines. After reviewing the conflicting evidence from Drs. Gilbert, Harris, and O'Brien, I rely on Dr. Gilbert in conjunction with Mr. Baize's credible testimony to find he does not have the physical capacity to return to his work as a coal miner.

. . .

Since Mr. Baize does not have the physical capacity to perform his work as a coal miner, he is entitled to three-multiplier under KRS[4] 342.730(1)(c)(1). . . .

Mr. Baize also alleged injuries to his shoulders as a result of his repetitive work activities as a miner. After reviewing the evidence, I rely on Drs. Harris and O'Brien to find Mr. Baize failed to meet his burden of proving work-related injuries to his shoulders . . . . So, his claim for benefits for his shoulders is dismissed.

The ALJ also dismissed Baize's claim for coal workers' pneumoconiosis.

---

[4] Kentucky Revised Statutes.

-5-

On June 6, 2024, MCC filed a petition for reconsideration requesting additional findings of fact. MCC argued that neither Dr. Rushing nor Dr. Gilbert was provided with an accurate medical history and that, therefore, their causation opinions cannot constitute substantial evidence, citing *Cepero v. Fabricated Metals, Corp.*, 132 S.W.3d 839 (Ky. 2004). Specifically, MCC contended that Baize's medical experts were not "made aware of the extensive nature of the Plaintiff's practice of Brazilian jujitsu, and therefore did not express an opinion as to what portion of the Plaintiff's physical complaints might be related, in whole or in part, to jujitsu rather than work in the coal mines." MCC further argued that in light of the record as a whole, Baize's testimony was neither credible nor consistent.

By Order rendered on June 25, 2024, the ALJ denied MCC's petition as follows:

> Defendant challenges my finding that Plaintiff gave credible testimony about his symptoms, prior injuries, and work activities. It alleges that because his testimony about his pectoral injury was not accurate, he is not a credible witness.
>
> I did dismiss Plaintiff's claim for benefits for his right pectoral injury. As I explained in my Opinion, I dismissed the claim because I found Drs. Harris and O'Brien's opinions were more persuasive because they were consistent with Plaintiff's medical treatment. . . .
>
> Defendant challenges my reliance on Dr. Gilbert's causation opinion considering Plaintiff's Brazilian jujitsu

-6-

practice. Specifically, it argues Dr. Gilbert's opinion is not substantial evidence because he did not know about Plaintiff's jujitsu practice. As I explained in my opinion, Dr. Gilbert explained that unless Plaintiff was practicing a physically demanding recreational activity, like football, every day, he did not think that would have caused Plaintiff's condition. (Gilbert Depo. 11:4-22).

Further, Drs. O'Brien and Harris were aware of Plaintiff's jiujitsu practice and neither explicitly determined the activity caused Plaintiff's neck and back conditions.

MCC appealed to the Workers' Compensation Board (Board) and argued: (1) that the ALJ's award of benefits for cumulative trauma to the neck and low back is not supported by substantial evidence and (2) that Baize's testimony was neither credible nor consistent when the record is reviewed as a whole.

In a unanimous Opinion rendered on November 1, 2024, the Board affirmed as follows:

On appeal, MCC argues the award was based upon the opinions of medical experts who did not have complete or accurate information regarding Baize's 27-year practice of jujitsu, and what extent it may have contributed to his injuries. Therefore, the ALJ's determination should be reversed based upon the holding in Cepero v. Fabricated Metals Corp., 132 S.W.3d 830 (Ky. 2004). MCC also argues Baize's testimony was inconsistent, evasive, and unreliable. MCC argues the record, when viewed in its entirety, does not constitute substantial evidence supporting the ALJ's decision. For the reasons set forth below, we disagree and affirm.

The Board fairly summarized the record below in detail, noting that MCC had submitted "numerous online photographs and videos outlining Baize's biography, lineage, and accomplishments in professional Brazilian jujitsu." After discussing the applicable law, the Board concluded that:

> Contrary to MCC's assertion, Dr. Gilbert's opinions constitute substantial evidence supporting the ALJ's findings of work-related neck and back injuries, as well as her determination Baize could not return to his former job as a coal miner. . . .
>
> MCC's reliance on Cepero v. Fabricated Metals Corp., supra, is misplaced. This claim is distinguishable from Cepero, which was an unusual case . . . . In Cepero, the Supreme Court found a medical opinion erroneously premised on the claimant's egregious omission of directly relevant past medical history was sufficient to mandate reversal based on an insufficient history received by the medical expert. . . .
>
> . . . .
>
> Baize never sought treatment for any injuries prior to seeing APRN Easler on May 1, 2021. Dr. Gilbert was deposed, cross-examined, and presented with hypotheticals challenging his opinions, and he testified he did not equate the occasional participation in jujitsu with the "day in and day out" physical demands of a sport such as football. He also acknowledged the very physical aspects of Baize's 10 years of labor in the coal mines, noting his alleged injuries are consistent with those sustained by similar workers. He ultimately did not change his opinion. The ALJ also noted that, although Drs. Harris and O'Brien were aware of Baize's jujitsu practice, neither of them directly pointed to that activity as expressly causing his injuries.

-8-

We are likewise unpersuaded by MCC's argument the ALJ erred in finding Baize's testimony credible . . . . The decision regarding who or what to believe, and the inferences to be drawn from the evidence, falls [*sic*] solely within the discretion of the ALJ. . . .

MCC seeks to have this Board usurp the role of the ALJ, which we cannot do. The Board's singular determination is whether substantial evidence supports the ALJ's decision and not whether certain evidence would have supported a different result. The ALJ adequately considered the evidence of record and explained her reasons for relying on Dr. Gilbert's opinions regarding the cause and extent of Baize's work-related injury. These are findings of fact upon which this Board cannot superimpose its own appraisals as to weight and credibility or by noting other conclusions or reasonable inferences that otherwise could have been drawn from the evidence. Miller v. Go Hire Emp. Dev. Inc., 473 S.W.3d 621, 629 (Ky. App. 2015). The ALJ adequately considered the evidence, provided a sufficient analysis, and she did not abuse her discretion.

In this appeal, MCC again argues: (1) that the award of benefits for cumulative trauma to the neck and low back is not supported by substantial evidence and (2) that Baize's testimony was neither credible nor consistent when the record is reviewed as a whole.

The claimant in a workers' compensation proceeding bears the burden of proving each of the essential elements of any cause of action, including causation. [Where, as here,] a claimant successfully carries that burden, the question on appeal is whether substantial evidence of record supports the ALJ's decision. . . .

-9-

In rendering a decision, KRS 342.285 grants an ALJ -- as fact-finder -- sole discretion to determine the quality, character, and substance of the evidence. An ALJ may draw reasonable inferences from the evidence, reject any testimony, and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. In that regard, an ALJ is vested with broad authority to decide questions involving causation.

Although a party may note evidence that would have supported a different outcome than reached by an ALJ, such proof is an inadequate basis for reversal on appeal. Rather, it must be shown there was no evidence of substantial probative value to support the decision.

. . .

The appellate tribunal may not usurp the ALJ's role as fact-finder by superimposing its own appraisals as to weight and credibility or by noting other conclusions or reasonable inferences that otherwise could have been drawn from the evidence. If an ALJ's findings of fact are supported by substantial evidence, a finding contrary to the ALJ's findings cannot be sustained.

*Miller v. Go Hire Employment Development, Inc*., 473 S.W.3d 621, 628-29 (Ky. App. 2015) (citations omitted).

We address MCC's second argument first. MCC contends that the "problem" with the ALJ's conclusion that Baize testified "credibly" is that his deposition testimony and hearing testimony were inconsistent, that the history he related to Dr. Gilbert differed from his hearing testimony, and that it is difficult to reconcile Baize's activities depicted on the videos with someone who is

-10-

significantly limited by back and neck pain. Inconsistency goes to the credibility of a witness. Credibility determinations lie solely within the ALJ's discretion -- not ours. *See Saxton v. Commonwealth*, 671 S.W.3d 1, 10 (Ky. 2022) ("[I]nconsistency goes to credibility of a witness, and credibility determinations are the prerogative of the jury.").

MCC also argues that the award of benefits for cumulative trauma to the neck and low back is not supported by substantial evidence -- the identical argument which it unsuccessfully made to the Board. As our Supreme Court explained over thirty years ago in *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992):

> The [Board] is suppose[d] to decide whether the evidence is sufficient to support a particular finding made by the ALJ . . . These are judgment calls. . . .
>
> . . .
>
> The function of further review of the [Board] in the Court of Appeals is to correct the Board only where [this] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice.

We have reviewed the record before us and have found no such error.

We agree with the Board that *Cepero*, *supra*, is distinguishable on its facts. Although another ALJ may have decided this case differently, we cannot say that

the Board "committed an error in assessing the evidence so flagrant as to cause gross injustice." *Kelly*, 827 S.W.2d at 688.

Accordingly, we must affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:

Lori V. Daniel
Lexington, Kentucky

BRIEF FOR APPELLEE JOSEPH BAIZE:

McKinnley Morgan
London, Kentucky