RENDERED: AUGUST 24, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000194-WC

FAMILY DOLLAR                                                          APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-001053-WC
WORKERS' COMPENSATION BOARD NO. 06-WC-01247

MAMIE BAYTOS, WIDOW OF STEPHEN                          APPELLEES
BAYTOS, DECEASED
HONORABLE RICHARD M. JOINER,
ADMINISTRATIVE LAW JUDGE,
HONORABLE THOMAS G. POLITES, ADMINISTRATIVE
LAW JUDGE AND WORKERS' COMPENSATION
BOARD

AND

## 2015-SC-000208-WC

MAMIE BAYTOS, WIDOW OF STEPHEN                          CROSS-APPELLANT
BAYTOS, DECEASED

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-001053-WC
WORKERS' COMPENSATION BOARD NO. 06-WC-01247

FAMILY DOLLAR                                          CROSS-APPELLEES
HONORABLE RICHARD M. JOINER,
ADMINISTRATIVE LAW JUDGE,
HONORABLE THOMAS G. POLITES,
ADMINISTRATIVE
LAW JUDGE AND WORKERS' COMPENSATION
BOARD

1

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**AFFIRMING**

Steven Baytos settled his workers' compensation injury claim with his employer, Family Dollar Stores, for a lump sum. The settlement amount included separate consideration in exchange for Baytos's waiver of all future claims, specifically including future medical expenses and a "full and final waiver of any and all rights he may have to reopen this claim under Kentucky Revised Statute (KRS) 342.125, for any reason, including a change in condition." Baytos died a year later from his work-related injury; and, two years after that, his widow, Mamie Baytos, who was not a party to the settlement, filed a motion to reopen Baytos's injury claim to assert her own claim for a workers' compensation death benefit.

The Administrative Law Judge (ALJ) allowed Mamie to reopen Baytos's injury claim and awarded her death benefits. The Board reversed, and the Court of Appeals reversed the Board. The Court of Appeals determined that, under *Brashear v. Old Straight Creek Coal Corp.*,[1] claims for death benefits arising from a workers' compensation injury are not derivative of the income benefits the injured employee recovers from the employer. And as such, the Board's opinion was vacated and remanded for further proceedings.

On Family Dollar's appeal to this Court, we agree with the Court of Appeals that Mamie has a separate and viable claim for death benefits under KRS 342.750, and while we make an exception in today's case, we hold that it

---

[1] 32 S.W.3d 717 (Ky. 1930).

was improper for Mamie to assert her claim via reopening Baytos's settled claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Baytos was employed by Family Dollar Stores when he suffered a torn thoracic aorta in 2006. He filed a claim for workers' compensation benefits that was settled and approved by an Administrative Law Judge (ALJ) in 2008. Steven received a lump-sum payment from Family Dollar in exchange for his waiver of any future claims he may have against his employer. Also part of the settlement agreement, Steven agreed to additional sums in exchange for waiver of any future medical expenses and another sum in consideration for his "full and final waiver of any and all rights he may have to reopen this claim under KRS 342.125, for any reason, including a change in condition." His wife, Mamie Baytos, was not part of the settlement negotiations, nor did the final approved agreement include any references to any future benefits to which she may be entitled.

Steven died in 2009 as a result of his work-related injury. In 2011, Mamie filed a "Motion to Reopen and Award Survivor Benefits to Widow" to seek death benefits. The presiding ALJ ruled that her claim was viable, but ordered her to prove Baytos's death was caused by a work-related injury in order to recover death benefits under KRS 342.750. Shortly thereafter, her case was transferred to a new ALJ, who accepted the prior ALJ's findings of fact and determined that Steven's death was a result of the injury. And so the ALJ awarded death benefits to Mamie.

Family Dollar appealed the decision to the Workers' Compensation Board. The employer argued that Mamie's claims for death benefits were barred by the settlement agreement between Baytos and Family Dollar. In turn, Mamie filed a motion to dismiss the appeal, claiming that notice of the appeal was defective. The Board ignored Mamie's motion to dismiss and reversed the ALJ's ruling on the merits, denying her claim for benefits. Baytos appealed the decision to the Court of Appeals.

The Court of Appeals reversed the Board's decision. First, the panel rejected Mamie's argument that Family Dollar's appeal was improperly noticed. But on the merits, the Court of Appeals determined that under *Brashear v. Old Straight Creek Coal Corp.* claims for death benefits arising from a workers' compensation injury are not derivative of the income benefits the injured employee recovers from his employer. And as such, the Board's opinion was vacated and remanded for further proceedings. Family Dollar now appeals to this Court.

## II. ANALYSIS.

### A. Family Dollar's Notice of Appeal was Properly Filed.

Mamie contends that the Board erred by not dismissing Family Dollar's appeal following the ALJ's findings of fact. During the pendency of her claim, the presiding ALJ retired and was replaced by a new ALJ. She argues that the notice of appeal was defective because it named the incorrect ALJ. The Court of Appeals disagreed and determined that Family Dollar's appeal was properly noticed. And we concur.

4

In 2012, Family Dollar appealed to the Board following ALJ Joiner's opinion and order on the viability of her claim. The Board dismissed the appeal as interlocutory. Shortly thereafter, ALJ Joiner was replaced by ALJ Polites, who eventually issued a final and appealable order and opinion in favor of Mamie's claims. Mamie claims that Family Dollar referenced the incorrect ALJ opinion when noticing its appeal to the Board.

Family Dollar's notice of appeal began as follows:

[Family Dollar] requests a review by the Workers' Compensation Board of the opinion and award rendered herein by Honorable Richard Joiner, Administrative Law Judge, on June 19, 2012. The order on the petition for reconsideration was entered on July 10, 2012. This appeal was originally filed in August 2012 and was dismissed given the interlocutory nature of the underlying proceedings.

On February 4, 2014, Hon. Tom Polites, ALJ rendered a decision in this claim which now makes the 2012 decision by Judge Joiner final and appealable.

Essentially, Mamie argues that because Family Dollar stated its desire to review the "opinion and award rendered herein by Honorable Richard Joiner," the employer failed to notice an intention to appeal a final order from the presiding ALJ.

Kentucky Administrative Rules (KAR) 803 KAR 25:010 § 21 outlines the required content of a notice of appeal taken from an ALJ to the Board. A properly filed notice must:

1. Denote the appealing party as the petitioner;

2. Denote all parties against whom the appeal is taken as respondents;

3. Name the administrative law judge who rendered the award, order, or decision appealed from as a respondent;

5

4. If appropriate pursuant to KRS 342.120 or 342.1242, name the Division of Workers' Compensation Funds as a respondent; and

5. Include the claim number.

On the face of the notice it is clear that Family Dollar is appealing the final order entered by ALJ Polites. The notice also clearly recounts the procedural posture leading to both ALJ Polites's ruling and Family Dollar's appeal to the Board. So we concur with the Court of Appeals that Family Dollar's appeal was properly noticed to the Board.

## B. Steven's Settlement Does Not Prohibit Mamie from Seeking Death Benefits.

The central substantive issue in this case is Family Dollar's assertion that Mamie's claim for death benefits should be dismissed. According to the employer, Steven completely settled his claim for all potential income benefits relating to his workers' compensation injury, and this settlement totally bars Mamie from asserting any additional claims for income benefits. In essence, Family Dollar argues that whatever benefits Mamie may be entitled to under the Workers' Compensation Act are derivative of Steven's claim and that his approved settlement preempts his widow's statutory benefits. The Court of Appeals disagreed, relying on the holding in an obscure old case, *Brashear v. Old Straight Creek Coal Corp.* We ultimately agree with this conclusion, but a thorough statutory review is necessary to add context to *Brashear* and to unpack the death-benefit-recovery claims under the Act.

KRS 342.750 provides for the recovery of income benefits for the surviving spouse if the injured employee dies as a result of a work-related

6

injury.[2] For surviving spouses, like Mamie, with no children, the statute provides that she is entitled to fifty percent of Steven's average weekly wage during widowhood.[3] Of course, this law makes no overt reference to how to treat these income benefits when the injured party settles his injury claim with his employer before dying from the effects of the injury.

It is clear by the plain meaning of the text that income benefits deriving from KRS 342.730 belong to the injured worker. Those benefits are totally derivative from the workplace injury. This provision specifically relates to income benefits awarded to injured workers for workplace injuries. And sure enough, KRS 342.730 contemplates a surviving spouse's share of those benefits in the event the injured spouse dies for causes unrelated to the work injury but before the expiration of benefits still owed to the worker.[4] These surviving-spouse benefits are totally and completely derivative of the injured spouse's disability benefits; any surviving spouse's share of remaining benefits is tied to whatever the worker is awarded or obtained through settlement with the employer. So it is easy for us to see in that context that the spouse's claim is dependent on the worker's claim. But with respect to surviving-spouse

---

[2] The Court of Appeals stated that surviving spouses shall receive death benefits if the death occurs within four years of the injury. In this sense, the panel misstated the text. The portion of this provision relating to income benefits has no such limitation—in fact, there is no temporal limitation whatsoever within KRS 342.750 for the recovery of death benefits. The four-year limitation the panel cites only applies to KRS 342.750(6), a separate provision within this statute relating to an estate's entitlement to a $50,000 lump-sum payment to offset costs of burial and transportation of the body.

[3] KRS 342.750(1)(a).

[4] KRS 342.730(3).

7

benefits stemming from a workplace injury resulting in death, we are given no such luxury.

KRS 342.750 declares that if the workplace injury causes death, "income benefits *shall* be payable" to the benefit of specified persons within the statute, dependent upon the injured workers familial status. Before leaping head-first into some sort of legal fiction, we must first realize that of course a spouse's claim is not a unique and separate claim totally divorced of any other actors. For Mamie to be entitled to income benefits under the statute, Baytos must die as a result of his work-related injury. It follows, therefore, that this claim is created by *his* injury.

This is consistent with the underlying goal and purpose of the Workers' Compensation Act: As a matter of quasi-contract law, the Act establishes a streamlined process for quickly aiding injured workers in exchange for the forfeiture of whatever tort claims the injured worker may have against the employer. Mamie, not unlike her role in Baytos's settlement negotiations, was not a party to this implicit agreement under the Act. Likewise, she is only entitled to any benefits at all because of Baytos's participation in this statutory agreement.[5] Baytos's eligibility under the Act, and his subsequent injury and death, are the only reasons Mamie qualifies for any benefits under the Act whatsoever. So we reject the fantasy that Mamie has her own separate action

---

[5] True enough, this begs the question of whether third-party beneficiaries like Mamie forfeit whatever tort rights they may possess against their spouse's employer. The Act clearly covers employer-employee relations through application of contract principles, but how this impacts other relevant parties not capable of the benefit of the bargain remains clouded in doubt. Does the Act include all tort claims from any potential plaintiff against an employer for a singular occurrence, or could Mamie conceivably forego the Act and file whatever survivorship or wrongful death claims she may possess against Family Dollar in courts of common law?

8

under the Act wholly without consequence of Baytos's claim against his employer.

With that said, there is a mountain of old precedent throughout the country reaching the opposite conclusion. Most notably, the Court of Appeals relied heavily on this Court's predecessor in *Brashear v. Old Straight Creek Corp.* in reaching its holding. In *Brashear*, our predecessor court indicated that the right of a surviving spouse to collect income benefits is separate from whatever rights her worker-husband possessed as a result of his injury. In other words, the Court held that the "compensation due to her, if any, is quite a different thing from the compensation paid for her husband."[6] It would therefore appear that *Brashear* speaks directly to instances similar to the one presented to us today.

But there are two legitimate critiques to *Brashear* that Family Dollar invokes to caution us against our reliance in that old case. First, the *Brashear* case was published in 1930. KRS 342.750 was first adopted in 1972. It is entirely possible the *Brashear* court was interpreting a statutory text markedly different from the one in this case. Indeed, the *Brashear* court did not even make passing reference to which statutory provision it was interpreting. And because of its terse, if not altogether lacking, legal analysis, this is a fair critique.

*Brashear* interpreted the Kentucky Workmen's Compensation Act as it existed well before the legislative overhaul in 1972. However the provision at issue—Ky. Stat. § 4893, enacted in 1922—actually bears much similarity to the

---

[6] *Brashear, 32 S.W.2d* at 718.

language in our current statutory scheme. The statute, in relevant part, reads as follows:

> If death results within two years from an accident for which compensation is payable under this act, the employer or his insurer shall pay to the persons entitled to compensation, or, if none, then to the personal representative of the deceased employee, reasonable burial expenses of a person of the standard of living of the deceased, not to exceed the sum of seventy-five dollars ($75.00), and shall also pay to or for the following persons compensation as follows, to wit:
>
> ...
>
> (2) If there are one or more wholly dependent persons, sixty-five percent (65%) of the average weekly earnings of the deceased employee, but not to exceed twelve dollars ($12.00) nor less than five dollars ($5.00) per week shall be payable, all such payments shall be made for the period between the date of death and 335 weeks after the date of the accident to the employee, or until the intervening termination of dependency, but in no case to exceed the maximum sum of four thousand dollars ($4,000.00).[7]

The following statute, Ky. Stat. § 4894, then defines a person presumed to be wholly dependent upon a deceased employee as "A wife upon a husband whom she had not voluntarily abandoned at the time of the accident."[8] Overall, we are satisfied that the statutory structure the *Brashear* court interpreted is quite similar to the one under which Mamie now seeks death benefits. So we are confident that the *Brashear* holding accurately represents this Court's precedent on the nature of death-benefit claims.

Second, Family Dollar highlights that in its eighty-seven-year history, *Brashear* has never been cited by another Kentucky court. However factually and legally similar this holding may be, Family Dollar insists that its

---

[7] Ky. Stat. § 4893 (1922).

[8] Ky. Stat. § 4894(a) (1922).

10

precedential weight is severely diminished by its relative obscurity and that it has been more-or-less ignored in the body of workers' compensation law as it has developed over the course of the last century. So Family Dollar in essence alleges that the *Brashear* holding is non-representative of a prevailing or mainstream position on forging these types of claims against employers under the Act. We do not discount this concern; the fact that today's case presents such a novel issue is indeed evidence that *Brashear*, for whatever reason, failed to capture the death-benefit-recovery process as settled law. And because it has been ignored, its de minimus contribution to the predictability and reliability of case law—critical tenets of stare decisis—fairly calls its precedential value into question.

But before we dismiss *Brashear* for its obsolescence, by stepping back and observing the larger body of workers' compensation law across the country, we discover that the *Brashear* position is actually somewhat congruent with the approach taken by much of the rest of the country. As the Court of Appeals noted in reaching its conclusion, Professor Larson takes this exact position in his comprehensive workers' compensation handbook. The treatise details that "The dependent's right to death benefits is an independent right derived from statute, not from the rights of the decedent. Accordingly, death benefits are not affected by compromises or releases executed by decedent...."[9] So it would appear that the surrounding law accepts this basic premise that the surviving spouse possesses his or her own claim independent of the injured workers.

---

[9] Arthur K. Larson, *Larson's Workers' Compensation,* Desk Edition § 98 (2007).

11

Family Dollar discounts reliance on Larson as a distracting influence on the true nature of this claim. Instead, the employer wishes us to rely upon *Tackett v. Bethenergy Mines*[10], a case involving surviving spouses of former coal miners who filed for workers' compensation benefits under KRS 342.750's companion statute, KRS 342.730(3) (death resulting from non-work injury). In that case, we dismissed the claims because no benefits were due or owed to the workers themselves at the time of their deaths.[11] This was because, "any claim which a deceased worker's estate might have derives from a valid claim by the worker."[12] So, as Family Dollar frames the issue, for Mamie to bring a valid claim for benefits she must first prove entitlement to those benefits. And because Baytos had no benefits due to him at his death because of his fully settled claim with Family Dollar, there are no benefits to which Mamie would be entitled to spark her claim.

We support our ruling in *Tackett* as a logically consistent application of KRS 342.730(3). Unfortunately for Family Dollar, however, this ruling truly delineates the difference between the benefits extended in that statute and those conferred in KRS 342.750. The *Tackett* benefits are indeed accurately considered to be derivative of the injured worker's claim. KRS 342.730(3) benefits provide surviving spouses a continuation of benefits the worker was currently receiving from his or her employer due to an unrelated death before the expiration of his specified compensable period. It is sensible then to require

---

[10] 841 S.W.2d 177 (Ky. 1992).

[11] *Id.*

[12] *Id.* at 179.

12

as prerequisite to any spousal recovery proof of the deceased's spouse's entitlement to benefits.

But this stands in contrast to the benefits involved in the current case. KRS 342.750 contemplates a wholly different scenario: death as a result of the workplace injury. This statutory mechanism shifts entitlement of benefits from the injured worker to his surviving spouse. Under the terms of the statute, if the death is truly caused by the work-related injury, the *Tackett* test is satisfied automatically—the spouse has a legitimate claim of entitlement to benefits. At the time of death, the surviving spouse can point to a set of benefits designated for him or her by a purposive act of the legislature.

The form of recovery also underscores the distinction between the two forms of death benefits. For non-injury-related death, as detailed in *Tackett*, surviving spouses are afforded an award based on portions of the remaining unpaid income benefits due to the worker at the time of death. But for workers who die on the job, their surviving spouses are entitled to recover portions of that worker's *average weekly wage*. This form of recovery is not a continuation of unpaid income benefits but rather mechanically recognizes the claim a spouse may then have against an employer for the employee's death and then resolves that claim by statute, specifying precisely what he or she is due. Today's case unquestionably falls into this latter class, and as such, our dismissal in *Tackett* has no bearing on Mamie's ability to recover.

Of course, it goes without saying that it is unlikely the legislature contemplated a scenario like we face today when it created these two forms of death benefits. It must be exceedingly rare for a series of events to culminate in a claim like this—an employee living just long enough to settle his claim before

13

succumbing to the effects of his injury. The KRS 342.750 death benefits are almost surely envisioned to aide dependents for workers unable to live long enough to adjudicate their own claims under the Act. But while this result doubling the exposure to employers under the Act may be rare, we cannot say it is an absurd one. Any other path outside the statutory text belongs in the legislative rather than judicial province, and the burden rests solely on the General Assembly to reform the Act to include these undoubtedly rare cases should they continue to arise.

The text of KRS 342.750 is inescapable. The plain meaning is unmistakably clear that if a worker dies because of a workplace injury, the worker's surviving spouse is entitled to income benefits in the form of 50 percent of his average weekly wage. And this Court has previously interpreted this provision, in a manner academically favored and consistent with a majority of other jurisdictions, to create a separate cause of action for surviving spouses independent of the injured worker's claim. We accordingly affirm that ruling, and the Court of appeals' ruling below.

We understand the implications this ruling may have on the settlement-negotiation process and the possibility that this holding may undercut the ability of employers and injured employees to come to an agreement with binding finality.[13] But those problems belong to the legislature to resolve and

---

[13] Relevant to Family Dollar's ability to resolve the claim with finality, Mamie adds that even if Baytos considered her claim in his negotiation with Family Dollar, he was unable to execute a waiver of death benefits as described in KRS 342.750. The uncontroverted facts of the case make clear that no such express contemplation occurred. So we need not address today the issue of whether Baytos could have included surviving-spouse benefits in his settlement agreement with Family Dollar. We also add that Baytos's settlement agreement with Family Dollar included an indemnity provision that has not been raised or addressed during the course of this appeal.

14

are beyond our constitutional prerogative of interpreting the law as presented by the case before us.

Although we affirm the Court of Appeals's ruling below, we must address one issue not directly raised by the parties—whether this claim was appropriately brought under KRS 342.125. KRS 342.125 provides that a party may file a motion to reopen a claim; however, as we have noted and as both parties have agreed, Mamie was not a party to her husband's claim. Furthermore, Baytos had waived entitlement to any additional benefits and had no claim to reopen. Therefore, KRS 342.125 was not the appropriate vehicle for Mamie to pursue her independent entitlement to benefits. The appropriate vehicle to do so would have been for Mamie to file a claim for benefits in her own right. However, whether the parties called this a reopening or a new independent claim, it would have been practiced the same way and would have led to the same conclusion. Therefore, although Mamie chose the wrong vehicle, there is no reason to disturb the ALJ's decision herein. However, in the future, should this situation reoccur, the party seeking benefits should file an original action.

### III. CONCLUSION.

For the foregoing reasons we affirm the Opinion of the Court of Appeals. Minton, C.J.; Cunningham, Hughes, Keller, Venters, and Wright, JJ., sitting. All concur. VanMeter, J., not sitting.

---

Because that issue is not within the scope of our current review, we must pass no judgment on its possible effect in Mamie's appeal or Family Dollar's ability to settle with finality all claims related to Baytos's injury.

15

COUNSEL FOR APPELLANT/CROSS-APPELLEE: FAMILY DOLLAR

Melanie Brooke Gabbard
Allen Kopet & Associates, PLLC

Lewis Paisley
Stoll Keenon Ogden, PLLC

COUNSEL FOR APPELLEE/CROSS-APPELLANT: MAMIE BAYTOS

Carl Edward Grayson
Blankenship Massey & Associates, PLLC

COUNSEL FOR AMICUS CURIAE: KENTUCKY WORKERS ASSOCIATION
(KWA):

Jeffery Roberts
Roberts Law Office