RENDERED:  DECEMBER 8, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1487-WC

KENTUCKY EMPLOYERS'
MUTUAL INSURANCE
AUTHORITY, FORMERLY
KENTUCKY COAL WORKERS
PNEUMOCONIOSIS FUND AND
MARGARET P. DE MOVELLAN,
DIRECTOR                                                            APPELLANTS


                    PETITION FOR REVIEW OF A DECISION
v.                  OF THE WORKERS' COMPENSATION BOARD
                    ACTION NO. WC-14-01039


LENVILLE FLEMING, DECEASED;
CAM MINING LLC; DEBRA
FLEMING, INDIVIDUALLY AND IN
HER OWN CAPACITY AS WIDOW
OF LINVILLE FLEMING AND AS
EXECUTRIX AND/OR
ADMINISTRATOR OF THE ESTATE
OF LINVILLE FLEMING;
HONORABLE DOUGLAS W. GOTT,
CHIEF ADMINISTRATIVE LAW
JUDGE; ROCKWOOD CASUALTY
INSURANCE COMPANY; AND
WORKERS' COMPENSATION
BOARD                                                                APPELLEES

<u>OPINION</u>
<u>REVERSING AND REMANDING</u>

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND EASTON, JUDGES.

CETRULO, JUDGE:  Appellant Kentucky Employers' Mutual Insurance

Authority ("KEMI") appeals a final decision of the Workers' Compensation Board

("the Board") that awarded Appellee Debra Fleming ("Mrs. Fleming"), the widow

of Lenville Fleming ("Mr. Fleming"), derivative benefits from her deceased

husband's workers' compensation settlement agreement through the agreed-to date

of September 6, 2029.  After review, we reverse and remand.

## I.     BACKGROUND

Mr. Fleming was diagnosed with an occupational disease, coal

workers' pneumoconiosis, after 24 years of exposure to coal dust inhalation.  In

February 2015, Mr. Fleming settled his workers' compensation claim ("settlement

agreement") with CAM Mining LLC and the Coal Workers' Pneumoconiosis

Fund, now KEMI.  The monetary terms of the settlement agreement included

payment – to be paid in equal shares by CAM Mining LLC and KEMI – to Mr.

Fleming in the amount of $632.92 per week beginning with the date of last

exposure in March 2012 and continuing until Mr. Fleming reached social security

disability age, his 67th birthdate, in September 2029.  The agreement included

separate consideration in exchange of Mr. Fleming waiving his right to reopen the

matter for an increase in benefits under Kentucky Revised Statute ("KRS") Chapter 342, the Workers' Compensation Act, including, but not limited to, claims under KRS 342.750, KRS 342.730,[1] KRS 342.316, or KRS 342.732.  Mrs. Fleming was not a party to this settlement agreement, nor did it contain language specifically discussing the parties' obligations/rights if Mr. Fleming died before September 2029.

In January 2022, Mr. Fleming died.  Mrs. Fleming filed a *pro se* Form 11 Request to Substitute Party and Continue Benefits and attached a death certificate listing Mr. Fleming's causes of death as (1) congestive heart failure, (2) COPD,[2] and (3) coal miners' pneumoconiosis.  In April 2022, the Chief Administrative Law Judge ("Chief ALJ") sustained the Form 11 and ordered benefits to be continued to Mrs. Fleming as outlined within the settlement agreement.  The Chief ALJ made only one substantive change; he continued benefit payment through what would have been Mr. Fleming's 70th birthdate pursuant to KRS 342.730(3)(a) and subject to the tier-down provision of the 1994 version of KRS 342.730(4).  KEMI appealed.

---

[1] We note, there are three versions of KRS 342.730(4) which govern a surviving spouse's request for continuation of workers' compensations benefits:  1) a 1994 version no longer in effect; 2) a 1996 version later declared unconstitutional; and 3) the current 2018 version applied retroactively.  *Yamamoto FB Eng'g, Inc. v. Elrod*, No. 2022 SC-0381-WC, 2023 WL 5444424 (Ky. Aug. 24, 2023).

[2] Chronic Obstructive Pulmonary Disease.

In November 2022, the Board issued an Opinion Affirming in Part, Vacating in Part, and Remanding. The Board found that the parties were bound by the fixed terms of the "very specific and stringent settlement agreement" "without alteration," *i.e.*, without the three additional years of benefits added by the Chief ALJ. The Board found that the settlement agreement "firmly demonstrate[d] the parties intended [CAM Mining LLC and KEMI] to pay the same weekly amount through September 6, 2029, to [Mr.] Fleming and now his widow without reference to a statutory provision which would alter the weekly amount."

Next, the Board determined that – distinct from precedent cited by KEMI – Mrs. Fleming's sole remedy was *not* only to file a separate action because income death benefits were still due Mr. Fleming at the time of his death. Finally, the Board noted that the "death certificate reflect[ed] congestive heart failure was the immediate cause with COPD as a contributing condition and [coal miners' pneumoconiosis] as an underlying cause." As such, the Board stated that the death certificate does not *per se* establish that Mr. Fleming's death was work-related, and therefore, additional proof would be necessary to establish the applicability of KRS 342.750. However, because the terms of the settlement agreement were binding, further discussion of the possible applicability of KRS 342.750 was not necessary.

The Board found, "KEMI owed the benefits to [Mr.] Fleming and now owes the remaining benefits to his widow." KEMI again appealed.[3]

## II.    STANDARD OF REVIEW

"[R]egarding questions of law, this Court is bound neither by the decisions of an ALJ or the Board regarding proper interpretation of the law or its application to the facts. In either case, the standard of review is *de novo*." *Miller v. Go Hire Emp. Dev., Inc.*, 473 S.W.3d 621, 629 (Ky. App. 2015).

## III.    ANALYSIS

On appeal, KEMI argues (1) the proper procedure for pursuing survivor's benefits was not for Mrs. Fleming to substitute herself into the existing settlement agreement, but rather to file a new claim; (2) the Board erred in determining that the workers' compensation survivor statutes – specifically KRS 342.730 and KRS 342.750 – did not apply to the settlement agreement; and (3) the pertinent Kentucky Supreme Court constitutional decisions are not retroactively applicable.

Addressing the last issue first, the relevant Kentucky Supreme Court constitutional decisions discussed herein *are* retroactively applicable. *Elrod*, 2023

---

[3] Mrs. Fleming did not file any briefs or pleadings in either of the proceedings below or before this Court. Cam Mining LLC did not appeal the Board's decision.

WL 5444424.[4]  In *Elrod*, the injured worker reached a settlement – which was approved by an ALJ – and included an award to the worker for weekly benefits until age 67.  *Id*. at *1.  There, when the worker died, his widow filed a Form 11 requesting to be substituted as a party and to receive a continuation of his benefits.  *Id*. at *2.  The Chief ALJ permitted the substitution and directed that 100% of the weekly benefits be paid to the widow for the remainder of the weeks that her spouse had been entitled to receive benefits per the agreement.  *Id*.  The employer appealed, and the Board reduced the widow's payment to 50%.  *Id*.  The employer again appealed, and this Court agreed that payments to the widow should be decreased to 50%, but reversed the Board as to the time period for which the widow could receive those payments.  *Id*.  The employer again appealed.  *Id*.  Finally, our Supreme Court reversed in part, specifically finding that the current version of KRS 342.730(4) *does apply retroactively* to the claim for surviving spouse benefits because the General Assembly explicitly intended for it to do so.  *Id*. at *2-3 (citing *Holcim v. Swinford*, 581 S.W.3d 37, 43 (Ky. 2019)).

---

[4] KEMI filed its Petition for Review before *Elrod* was decided.  Though this unpublished case is not binding authority, we find its reasoning persuasive and cite it in the absence of binding Kentucky authority on this specific issue.  *See also Taylor v. Commonwealth*, 671 S.W.3d 36, 42 (Ky. 2023) ("Although unpublished cases as a rule are not meant to be cited as official pronouncements of what the law is, it would be disingenuous to say that this [Kentucky Supreme] Court is not bound by oath and fidelity to consistently apply the law in both published and unpublished decisions.").

In *Elrod*, the Supreme Court rejected the employer's arguments, that retroactive application of the current version of KRS 342.730 impermissibly expands its obligations. *Id*. at *4. Notably, the *Elrod* Court held that the widow was only entitled to 50% of the settlement benefits, because KRS 342.730(3) is applicable to settlement agreements and has, at all relevant times, explicitly provided that surviving spouse benefits be paid at 50% of the rate specified in the award. *Id*. at *2-4.

Similarly, here, the benefit payments to the deceased employee were still due at the time of his death, and – assuming the employee died due to work-related causes – the widow is entitled to those benefits, but only at a 50% rate because KRS 342.730(4) is applicable to settlement agreements. However, we are not a fact-finding Court – *Miller*, 473 S.W.3d at 629 – and there has not been a factual finding that Mr. Fleming died due to work-related causes. This is result-determinative, because the cause of death determines which statute is applicable to the survivor's claims.

There are generally two types of survivors' claims: one created by KRS 342.730(3) and the other by KRS 342.750(1). KRS 342.730 permits injured workers to receive income benefits, or continuation benefits, the period and amount of which are based on the disability that results from the injury. If the worker dies from a "non-work-related" cause before the award expires, KRS

342.730(3) directs the continuation of portions of the workers' income benefits to certain dependents. In contrast, KRS 342.750 is titled "Income benefits for death" and addresses benefits that are payable for the benefit of certain specified survivors where a "work-related" injury has caused a death. *Realty Improvement Co., Inc. v. Raley*, 194 S.W.3d 818, 821 (Ky. 2006). If the worker dies due to a work-related injury, KRS 342.750 generally permits the surviving spouse, and certain actual dependents, to receive income benefits that are *even greater* than those authorized by KRS 342.730(3). *See Brusman v. Newport Steel Corp.*, 17 S.W.3d 514 (Ky. 2000).

This distinction was discussed in another Kentucky Supreme Court case, *Family Dollar v. Baytos*, 525 S.W.3d 65 (Ky. 2017). In *Baytos*, the worker had settled his workers' compensation injury claim with his employer, Family Dollar Stores, for a lump sum. *Id.* at 66. The settlement amount included separate consideration in exchange for Baytos's waiver of all future claims, specifically including future medical expenses and a "full and final waiver of any and all rights he may have to reopen." *Id.* However, Mr. Baytos died a year later *from his work-related injury*; and, two years after that, his widow, who was not a party to the settlement, filed a motion to reopen the injury claim to assert her own claim for a workers' compensation death benefit. *Id.* at 66-67. In its discussion of such awards of death benefits under KRS 342.750, the Supreme Court did direct that *in*

*the future*, claims under KRS 342.750 should be filed as a separate action rather than through a motion to reopen. *Id.* at 72. Based upon *Baytos*, KEMI argues that Mrs. Fleming was required to file a separate action in her own right in accord with KRS 342.750.[5]

However, the Board's decision distinguished *Baytos*, as income benefits were still due Mr. Fleming at the time of his death, while in *Baytos* the injured party had already received a lump sum award. Then, the Board stated that "we disagree that [Mrs. Fleming's] sole remedy is to file a separate action under KRS 342.750." We similarly point out that *Baytos* is also distinguishable because, here, we do not have a necessary factual finding that points us to the correct statute: whether Mr. Fleming died from a work-related injury. In *Baytos*, the sole avenue of relief for his widow was to seek the death benefit available under KRS 342.750. Here, if Mr. Fleming's death was *not work-related*, KRS 342.730 instead applies, and it is now clear from *Elrod* that the statute may be applied retroactively. We cannot determine as an appellate court the cause of Mr.

_____

[5] Mrs. Fleming was 63 years old when Mr. Fleming died and case law in effect at the time of the settlement agreement precluded recovery of death benefits to widows after they reached the age of 60. *Morsey, Inc. v. Frazier*, 245 S.W.3d 757 (Ky. 2008). KEMI argued that the law in effect at the time of the settlement and date of last exposure applies. In addition, KEMI also argued that the Fund only pays benefits to coal miners, not their dependents, and that it cannot be held liable for new claims. (KRS 342.1242, effective 2017, states that the Fund is not liable for new claims.) Again, KEMI, relying upon *Baytos*, maintains that Debra's claim, if any, must be pursuant to KRS 342.750 and would constitute a new claim. Thus, KEMI argues that it would owe nothing to a dependent for a new claim.

Fleming's death, and the lack of a finding in that regard requires us to remand for that finding and then a determination of Mrs. Fleming's right to benefits.

As the Court directed in *Baytos*, these "surviving-spouse benefits are totally and completely derivative of the injured spouse's disability benefits; any surviving spouse's share of remaining benefits is tied to whatever the worker is awarded or obtained through settlement with the employer." *Baytos*, 525 S.W.3d at 69. Further, in *Baytos*, the Court held that KRS 342.730 "contemplates a surviving spouse's share of those benefits in the event the injured spouse dies for causes unrelated to the work injury but before the expiration of benefits still owed to the worker." *Id.* at 68-69.

Here, the problem before this Court is that the Chief ALJ and the Board did not make a clear finding as to Mr. Fleming's cause of death, finding instead that the settlement agreement itself governed the amount and duration of the benefits to the spouse. The Board did note that Mr. Fleming's death certificate did not *per se* establish that his death was work-related, as it reflected congestive heart failure as the immediate cause, and COPD and pneumoconiosis as underlying causes. The Board's opinion concluded that it did not have to determine Mrs. Fleming's rights under either statute but could award the continuing benefits based solely upon the parties' agreement. Mrs. Fleming was not a party to the settlement agreement. Rather, she was a surviving spouse who sought continuation benefits

by requesting leave to be substituted as a party plaintiff, which, according to *Elrod*, is a "claim" that is entitled to retroactive application of the current version of KRS 342.730(4). *Elrod*, 2023 WL 5444424, at *3.

As this Court held in *Bell v. Consol of Kentucky, Inc.*, 294 S.W.3d 459 (Ky. App. 2009), KRS 342.730(3) is applicable to a settlement award. The worker in *Bell* died from unrelated causes, while he was still receiving benefits. *Id.* at 461. The widow sought to be substituted as the real party in interest and to recover the full amount of the agreed upon benefits based upon the wording of the settlement agreement. *Id.* There, this Court upheld the Board and its reduction to 50% of the rate specified in the settlement agreement consistent with KRS 342.730. *Id.* at 462.

We agree with KEMI that the issue of how remaining benefits are to be distributed to a widow after an employee's death is controlled by either KRS 342.730 or KRS 342.750, regardless of whether a case is settled or there is an ALJ award. Upon remand, the Board must make a factual finding whether Mr. Fleming died of his work-related pneumoconiosis or of other causes unrelated to his work-related condition and then apply the appropriate statute to Mrs. Fleming's claim. The Board – after that factual determination and a review of *Elrod* – will then be able to address any of KEMI's remaining procedural challenges.

## IV.   CONCLUSION

Therefore, we REVERSE and REMAND for further proceedings consistent with the views expressed herein and in *Elrod*.

ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEES.

W. Barry Lewis
Hazard, Kentucky