**BAPTIST HOSPITAL EAST, Appellant,**

v.

**August POSSANZA; Honorable Grant S. Roark, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**No. 2009–SC–000563–WC.**

Supreme Court of Kentucky.

Nov. 25, 2009.

---

Douglas Anthony U'Sellis, U'Sellis & Kitchen, PSC, Louisville, KY, Counsel for Appellant, Baptist Hospital East.

Mark Clark Webster, Karl Truman Law Office, LLC, Jeffersonville, IN, Counsel for Appellee, August Possanza.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) dismissed the claimant's application for benefits due to his misrepresentation of his physical condition when applying for employment. The Workers' Compensation Board reversed, holding that the ALJ misapplied KRS 342.165(2) by relying on the fact that the employer hired the claimant to show a causal relationship between his misrepresentation and work-related injury. The Court of Appeals affirmed.

We affirm. We view whether exceeding the claimant's lumbar lifting restriction helped to cause his neck injury to be a medical question. The medical evidence reveals no causal relationship.

The claimant sought workers' compensation benefits for a neck injury that occurred on July 31, 2007, as he helped to lift a patient in the course of his work as a psychiatric nurse at Baptist Hospital East. Medical evidence submitted in the claim revealed a history of previous lumbar surgery and related medical restrictions. The hospital did not dispute that the injury occurred but contested the claim under KRS 342.165(2), asserting that the claimant misrepresented his physical condition and medical history on his employment application. The hospital argued that he would not have been hired had he revealed his restrictions. Thus, he would not have been lifting a heavy patient, which exceeded his lifting restriction and caused his injury.

The claimant applied for work at the hospital's Behavioral Health Access Center in April 2006. He was interviewed and provided a copy of the job description, which indicated, among other things, that he must be able to stoop and to push, pull, and lift up to 50 pounds occasionally. He also completed a form entitled "Ability to Perform Duties" on which he responded "no" to a question asking if he had any physical limitations that would prevent him from performing the job outlined in the job description. He responded "yes" to a question about whether he ever had a Workers' Compensation injury and stated that he sustained a concussion and cervical strain in December 2004; received a CT scan and pain medication; was not currently under treatment for the injury; and

had no current work restrictions related to the injury.

The claimant testified subsequently that he underwent back surgeries in December 1997 and July 2005 and did not work during the interval between the latter surgery and his employment at Baptist Hospital East. He stated that he discussed the back surgeries at the interview. He failed to list any physical restrictions when completing the written form because he considered himself able to perform the job and did not think that he was under any formal low back restrictions. Moreover, he never saw the addendum to a March 22, 2006, office note by his treating physician, Dr. Djurasovic, until after he filed his claim. He stated that Dr. Djurasovic told him to let his symptoms be his guide but never told him that he could not return to work as a nurse. He stated that he received treatment in the emergency room for the 2004 cervical injury, missed only two days' work, and required no further treatment for the injury.

The claimant testified that his work at Baptist Hospital East required very little lifting because his patients were ambulatory and that nursing assistants and transporters generally performed any necessary lifting. He described the mechanism of the 2007 neck injury when deposed. He testified that he, a medical assistant, and four transporters transferred an overmedicated patient from a bed, onto a back board, and then onto a gurney. While helping to lift the patient, he felt pain on the right side of his neck.

Dale Nolan interviewed the claimant for the job at Baptist East. She testified that they discussed a previous neck strain that required him to miss some work but that he never mentioned a pre-existing lumbar condition. She also stated that she would not have hired the claimant had he disclosed the restrictions that Dr. Djurasovic

imposed on March 22, 2006, because they would have prevented him from performing the essential functions of the job.

Medical evidence indicated that the claimant underwent lumbar surgery in 1997 and that Dr. Djurasovic performed a fusion at the same level in 2005. Dr. Djurasovic's office note from March 22, 2006, indicated that the claimant was doing well and was looking for a new nursing job that did not involve much heavy lifting. An addendum to the note states as follows:

Of note, Mr. Possanza used to work in a psychiatry unit as a nurse and this involved a lot of lifting, a lot of physical restraint of patients. I do not think he should get back to this kind of work, although he is doing very well with his back now. If he goes back to a job that involves a lot of manual lifting or heavy work with his back, I think he would flare up his symptoms again. I think he needs to look for a job that does not involve a lot of heavy lifting, probably no greater than 20 pounds, and certainly not a job that would involve altercations with patients. I think this would be the best thing for him long term in terms of managing his back symptoms.

In a letter to the claimant's attorney, dated March 25, 2008, Dr. Djurasovic stated that the claimant's low back problem did not play a role in his neck condition or disqualify him from working at Baptist East. Dr. Djurasovic characterized the 20–pound lifting restriction as being "more of a temporary suggestion." He also stated that the claimant's back was solidly healed; that he was feeling well; and that he no longer had any specific back restrictions. Finally, Dr. Djurasovic reiterated that the restrictions "only applied to [the claimant's] lower back, not his neck."

When deposed by the employer, Dr. Djurasovic testified that he would have discussed the restrictions with the claim-

ant when releasing him from care for the lumbar condition on March 22, 2006. He explained that he generally warned patients who were doing well after surgery that their symptoms might flare up if they performed repetitive or occasional lifting, bending, twisting, or stooping, but he often failed to impose restrictions. Dr. Djurasovic viewed the existence of the March 22, 2006, addendum as an indication that he provided restrictions in response to a question from the claimant about whether he could return to work. When asked about his letter of March 25, 2008, Dr. Djurasovic stated that it was written with the benefit of hindsight rather than based on what he thought in 2006.

Dr. Harpring began treating the claimant's neck injury in October 2007 on referral from Dr. Djurasovic. He recommended surgery. Dr. Harpring stated in March 2008 that the neck injury was unrelated to the claimant's previous lumbar problems.

The ALJ dismissed the claim under KRS 342.165(2). Having reviewed the evidence, the ALJ found Dr. Djurasovic to be more persuasive than the claimant concerning the March 22, 2006, office visit. Convinced that the claimant knew of his restrictions, the ALJ determined that he knowingly misrepresented his physical condition by failing to disclose them on the employment application. The ALJ accepted Ms. Nolan's testimony that she would not have hired the claimant had she known of his restrictions. Finding a causal connection between his failure to disclose the restrictions and his injury, the ALJ reasoned that "if he had not been hired, he would not have been placed in the job that required him to assist moving heavy patients and, as such, he would not have been injured on July 31, 2007."

KRS 342.165(2) provides as follows:

No compensation shall be payable for work-related injuries if the employee at the time of entering the employment of the employer by whom compensation would otherwise be payable falsely represents, in writing, his physical condition or medical history, if all of the following factors are present:

(a) The employee has knowingly and willfully made a false representation as to his physical condition or medical history;

(b) The employer has relied upon the false representation, and this reliance was a substantial factor in the hiring; and

(c) There is a causal connection between the false representation and the injury for which compensation has been claimed.

Enacted in 1994, KRS 342.165(2) was a legislative response to cases in which an injured worker misrepresented his physical condition to the employer in the process of obtaining employment and later received an injury that was causally related to the misrepresentation.[1] KRS 342.165(2) codified a judicially-adopted test that prohibits compensation if all of the three listed factors are present.[2]

The hospital asserts that the ALJ interpreted and applied KRS 342.165(2) properly, arguing that its reliance on the claimant's misrepresentation was not used to satisfy both the second and third prongs of

---

1. *See Honaker v. Duro Bag Manufacturing Co.*, 851 S.W.2d 481 (Ky.1993) (worker who had his brother take pre-employment physical failed to comply with condition precedent to valid employment); *Divita v. Hopple Plastics*, 858 S.W.2d 214 (Ky.App.1993) (remand appropriate to determine the role of previous injuries in workers' compensation injury).

2. *Divita v. Hopple Plastics*, 858 S.W.2d at 215–16.

the test set forth in KRS 342.165(2). Instead, the ALJ based the finding of a causal connection on the fact that the claimant would not have been hired if he had told the truth and, thus, would not have performed work that exceeded his lifting restriction and been injured. The hospital concludes that a neck injury due to a slip and fall or reaching for a chart would have been compensable, but a neck injury due to exceeding the lifting restriction was not.

We presume that by listing three separate factors and by stating that all must be present, the legislature intended for KRS 342.165(2) to create three distinct requirements.[3] If subsection (c) requires only proof that the injury would not have occurred because the worker would not have been hired, an employer will always win simply by showing that it relied on a misrepresentation and would not have hired the worker had it known the truth. KRS 342.165(2)(c) requires "a causal connection between the false representation and the injury for which compensation has been claimed." The hospital states correctly that the claimant failed to disclose his lifting restriction; that he exceeded the restriction by lifting a heavy patient; and that he injured his neck as a consequence of lifting the patient. We do not agree that these facts supported a finding under KRS 342.165(2)(c) because we view whether exceeding the lumbar lifting restriction helped to cause the claimant's neck injury to be a medical question.

This is not a case in which lumbar weakness or symptoms contributed to the mechanism of the injury. Nor is it a case in which the claimant's lumbar condition increased his susceptibility to the type of harm that occurred. Both Dr. Djurasovic and Dr. Harpring stated that the claimant's lumbar and neck conditions were unrelated. Dr. Djurasovic based the claimant's lifting restriction on the previous lumbar surgeries. Although the claimant sought compensation for a neck injury incurred while exceeding the restriction, no medical evidence indicated that prior lumbar surgeries or exceeding a lumbar lifting restriction would cause a neck injury. We conclude, therefore, that the ALJ erred by finding for the hospital under subsection (c) and by dismissing the claim without further consideration. The ALJ must consider the remaining issues on remand.

The decision of the Court of Appeals is affirmed and this claim is remanded for consideration of the remaining contested issues.

All sitting. All concur.

---

3. *See Grieb v. National Bond and Investment Company,* 264 Ky. 289, 94 S.W.2d 612 (1936).