RENDERED: JANUARY 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0622-WC

FORD MOTOR COMPANY                        APPELLANT

PETITION FOR REVIEW
v.           OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-17-91338

LARRY BROWN;
HONORABLE JONATHAN R. WEATHERBY,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD           APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, MAZE, AND MCNEILL, JUDGES.

MAZE, JUDGE: Appellee, Ford Motor Company (Ford), petitions for review of
the opinion from the Workers' Compensation Board (Board) vacating and
remanding the opinion of the Administrative Law Judge (ALJ). For the following
reasons, we affirm.

## BACKGROUND AND PROCEDURAL HISTORY

In 2016, Appellant, Larry Brown, began working at Ford. On February 21, 2017, he injured his back while working. Brown filed a workers' compensation claim, which Ford contested as barred by Kentucky Revised Statutes (KRS) 342.165(2) because Brown had a previous back injury and surgery that he failed to disclose in his Ford employment application.

The ALJ held a benefit review conference on December 4, 2018, followed by a formal hearing on December 19, 2018. At the hearing, the parties introduced various evidence and presented several witnesses. The evidence relevant to this appeal is summarized below.

Brown testified that he injured his back in 1999 and underwent a fusion surgery in 2003 but had no issues with his back when he began working for Ford in 2016. In explaining his work injury, Brown testified that on February 21, 2017, he bent over to get a box of screws and, when he raised up, he felt pain shoot to his buttocks. He continued to try to work but, when he leaned over again, he felt fire shoot down to his waist. Brown was taken to the medical department by gurney because he could not stand. He was then taken to the hospital by ambulance, where he remained for several days. He developed several blood clots in his left leg and had to stay in a nursing home for several weeks thereafter. He ultimately returned to work at Ford on November 14, 2017. Brown admitted that

his Ford employment application contained some inaccurate statements and he failed to complete all the questions but testified he did not intend to deceive anyone when filling out the employment documents.

To support his claim, Brown presented the opinions of Dr. Peter Buecker, an orthopedic surgeon. Dr. Buecker opined that Brown, who had a spinal stenosis in 2003, was asymptomatic until the 2017 work accident exacerbated Brown's condition.

Ford presented Dr. Russell Travis, a neurosurgeon, to refute the opinions of Dr. Buecker. Dr. Travis opined that Brown only had age-related degenerative changes with no evidence of neural compromise when comparing Brown's 2017 MRI with an MRI performed in 2008. Dr. Travis opined that, at most, Brown suffered a lumbar strain and sprain in the work injury. Also, Dr. Travis performed an independent medical exam on Brown in June 2017, and he testified that Brown did not exert appropriate effort when he evaluated him, which suggested symptom magnification.

Ford also presented its plant physician, Dr. Raymond Hart, who testified that Brown indicated on his employment application that he had no prior operations, back pain, or restrictions. Dr. Hart further testified that Ford relied on that false information during the hiring process and, if Brown had been truthful and

disclosed his 2003 fusion surgery and ongoing complaints in 2011, it was unlikely that Ford would have hired Brown.

*The ALJ's February 18, 2019 opinion*

On February 18, 2019, the ALJ dismissed Brown's claim as barred by KRS 342.165(2). Pursuant to KRS 342.165(2), the ALJ found that Brown knowingly and willfully made a false representation as to his physical condition or medical history, Ford relied on that false representation and this reliance was a substantial factor in hiring him, and a causal connection between the false representation and Brown's injury existed. The ALJ also found that Dr. Travis "effectively refuted" the opinions of Dr. Buecker, and the ALJ was "particularly convinced and persuaded" by Dr. Travis' comparison of Brown's MRIs from 2008 and 2017, which revealed no evidence of neural compromise.

Brown petitioned the ALJ to reconsider his opinion. In his petition, Brown also requested the ALJ to make additional findings of fact, specifically about Brown's lack of symptoms between 2011 and 2016 and the causal connection between the false statement and Brown's injury.

*The ALJ's March 28, 2019 order*

On March 28, 2019, the ALJ entered further findings of fact, some of which repeated portions of his original opinion. The ALJ found that Brown's 2017 MRI results "were essentially unchanged from the results seen in 2008."

Therefore, the ALJ found "an unmistakeable [sic] causal connection between the prior undisclosed medical history and the injury claimed herein for which benefits are sought." Brown then petitioned the Board for review.

*The Board's August 9, 2019 opinion*

In an August 9, 2019 opinion, the Board affirmed in part and vacated in part the ALJ's opinion and order. The Board affirmed the ALJ's decision that Brown knowingly and willfully falsified his job application and that Ford relied on this falsification as a substantial factor in his hiring, which satisfied the first and second prongs of KRS 342.165(2). However, the Board vacated the ALJ's decision regarding the third prong, the causal connection between the falsification and Brown's injury, and remanded the case to the ALJ for additional findings. The Board stated:

> Standing alone, Dr. Travis' finding of no structural change appears to establish that Brown's current complaints are unrelated to his previous injury for which surgery was performed. There appears to be no evidence in the record establishing that Brown sustained any structural lumbar injury on February 21, 2017 while working for Ford. The ALJ failed to provide a finding as to how a possible strain in 2017 is related to a previous structural injury without interval change demonstrated on imaging studies. Dr. Travis acknowledged that Brown might have sustained a sprain or strain, despite his opinions regarding symptom embellishment. This would seem to establish his complaints are unrelated to the previous structural changes which were not disclosed to Ford.

Essentially, the Board needed additional findings because Dr. Travis' opinions did not seem to support a causal connection between Brown's back strain/sprain in 2017 and his previous back injury for which surgery was performed in 2003.

*The ALJ's October 22, 2019 remanded opinion*

On October 22, 2019, the ALJ issued his remanded opinion. The ALJ once again found that Dr. Travis' opinion supported the causal connection between Brown's previous back condition and his work injury because Brown had no changes when comparing the 2008 and 2017 MRIs.

Brown petitioned the ALJ for reconsideration asserting that, despite the Board's opinion, the ALJ failed to cite other evidence to establish a causal connection. Brown also requested additional findings of fact regarding: whether he sustained a work-related lumbar injury; the condition of his low back in the five years prior to the work injury; whether he was under restrictions or taking medication for his low back at the time of his work injury; and whether Brown had difficulty performing his job at Ford.

*The ALJ's November 22, 2019 order*

On November 22, 2019, the ALJ denied Brown's petition stating:

> The ALJ finds that the false representation and the alleged work injury involved the same body part and injury as confirmed by the MRI dated February 22, 2017, which showed minimal changes when compared to the prior one dated September 11, 2008, as referenced by Dr. Travis and previously cited by the ALJ.

-6-

The ALJ finds based upon this comparison and the observation made by Dr. Travis that there is an unmistakable causal connection between the prior fusion and the back injury claimed herein.

The above two paragraphs were the only findings made by the ALJ in its order. The ALJ did not make the additional findings requested by Brown in his motion to reconsider.

Brown then appealed the ALJ's remanded opinion and order to the Board. Brown argued that the ALJ relied upon the same evidence as in his original opinion, which the Board previously found insufficient to support a causal connection.

*The Board's February 28, 2020 opinion*

On February 28, 2020, the Board vacated the ALJ's October 22, 2019, remanded opinion and November 22, 2019, order and remanded the claim to the ALJ for entry of an amended opinion in conformity with the Board's opinion. The Board held that the ALJ failed to identify other evidence in the record to support his conclusion that Brown's 2017 work injury was causally connected to his prior back injury.

We find the evidence cited by the ALJ does not establish Brown sustained an injury at the fusion site while working for Ford. On remand, the ALJ again failed to provide a finding as to how a possible strain in 2017 is related to a previous structural injury without interval change demonstrated on imaging studies. Dr. Travis' diagnosis of a possible lumbar sprain/strain establishes

-7-

Brown's complaints are unrelated to the previous structural changes, which were not disclosed to Ford.

Because the ALJ failed to provide additional findings regarding the causal connection as the Board directed in its August 9, 2019, opinion, the Board vacated the ALJ's decision and remanded the claim for a determination of all remaining issues.[1]

Ford now petitions this Court for review.

STANDARD OF REVIEW

The Court's role in reviewing decisions of the Workers' Compensation Board "is to correct the Board only when we perceive that the Board has overlooked or misconstrued controlling law or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Butler's Fleet Service v. Martin*, 173 S.W.3d 628, 631 (Ky. App. 2005). "To properly review the Board's decision, this Court must ultimately review the ALJ's underlying decision. Where the ALJ has found in favor of the party who had the burden of proof, this Court must determine whether the ALJ's findings were supported by substantial evidence." *Abbott Laboratories v. Smith*, 205 S.W.3d 249, 253 (Ky. App. 2006)

---

[1] In this case, the ALJ was asked to decide: benefits per KRS 342.730, work-relatedness/causation, average weekly wage, unpaid or contested medical expenses, exclusion for pre-existing disability/impairment, Temporary Total Disability (TTD), and application of multipliers. Because the ALJ dismissed Brown's workers' compensation claim based on KRS 342.165(2), the remaining issues were rendered moot and not decided by the ALJ in his February 18, 2019 opinion.

(citing *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986)). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]." *Id.* (quoting *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971)). And, as the fact-finder, the ALJ, not this Court or the Board, has "sole discretion to determine the quality, character, and substance of the evidence." *Id.* Not only does the ALJ weigh the evidence, but the ALJ may also choose to believe or disbelieve any part of the evidence, regardless of its source. *Id.*

## ANALYSIS

Ford argues that the Board exceeded its authority by vacating and remanding the ALJ's opinion and order because it reweighed the evidence and came to a different conclusion than the ALJ. Specifically, Ford argues that the ALJ properly drew an inference from Dr. Travis' report and direct expert testimony is not needed to establish a causal connection under KRS 342.165(2). Ford claims that, by insisting that the ALJ establish a causal connection, the Board impermissibly substituted its judgment for the ALJ's. We disagree.

KRS 342.165(2) was enacted in 1994 as a legislative response to cases in which an injured worker misrepresented his physical condition to the employer in the process of obtaining employment and later received an injury that was

causally related to the misrepresentation. *Baptist Hosp. East v. Possanza*, 298

S.W.3d 459, 462 (Ky. 2009). The statute states:

> No compensation shall be payable for work-related injuries if the employee at the time of entering the employment of the employer by whom compensation would otherwise be payable falsely represents, in writing, his physical condition or medical history, if all of the following factors are present:
>
> > (a) The employee has knowingly and willfully made a false representation as to his physical condition or medical history;
> >
> > (b) The employer has relied upon the false representation, and this reliance was a substantial factor in the hiring; and
> >
> > (c) There is a causal connection between the false representation and the injury for which compensation has been claimed.

KRS 342.165(2). If all three prongs of KRS 342.165(2) are present, compensation

is barred to a worker. *Id.* The third prong, "a causal connection between the false

representation and the injury for which compensation has been claimed," is at issue

in this case. KRS 342.165(2)(c).

In *Baptist Hospital East*, *supra*, the Kentucky Supreme Court

explained the third prong of KRS 342.165(2). "If subsection (c) requires only

proof that the injury would not have occurred because the worker would not have

been hired, an employer will always win simply by showing that it relied on a

misrepresentation and would not have hired the worker had it known the truth."

*Baptist Hosp. East*, 298 S.W.3d at 463. Instead, the third prong requires a causal connection between the false representation and the work injury. *Id.*

Here, the issue is whether Brown's back injury from lifting a box of screws at work is causally connected to Brown's previous back condition and surgery that he failed to disclose to Ford. Like the Kentucky Supreme Court held in *Baptist Hospital East*, we view this as a medical question. *Id.* at 463. A back injury in 1999 that required surgery is not automatically connected to a back injury in 2017 occurring at work.

The Board reviewed this case twice before. Both times, the Board noted that the ALJ's findings were insufficient to support the causal connection. Yet, the ALJ continued to rely on Dr. Travis' opinion that Brown's MRIs from 2008 and 2017 were unchanged to support the causal connection.

For instance, in its first opinion, the Board specifically identified the problem with the causal connection and remanded the case to the ALJ to make additional findings to cure the deficiency: "The ALJ failed to provide a finding as to how a possible strain in 2017 is related to a previous structural injury without interval change demonstrated on imaging studies." The Board explained that, while Dr. Travis acknowledged that Brown may have suffered a back strain or sprain at work, Dr. Travis also opined that he saw no changes on Brown's MRIs.

Yet, on remand, the ALJ failed to make additional findings to support

his decision. The ALJ simply relied, once again, on Dr. Travis' opinion that he saw no changes between Brown's 2008 and 2017 MRIs. Because the ALJ failed to identify other evidence in the record to support a causal connection between the previous back injury and the 2017 work injury, the Board concluded that Ford could not succeed under KRS 342.165(2) as a defense.

Accordingly, we disagree with Ford's argument that the Board reweighed the evidence or impermissibly substituted its judgment for the ALJ's. The Board was very clear on what additional findings were needed to satisfy the causal connection under the third prong of KRS 342.165(2). When the ALJ failed to identify other evidence in the record to support the causal connection, the Board was compelled to vacate the ALJ's decision. This is not a "reweighing" of the evidence or a substitution of the Board's judgment for the ALJ's. Brown testified that he had no problems with his back when he began working at Ford, and Dr. Travis opined that Brown may have suffered a lumbar strain or sprain in the work injury. Dr. Travis' opinion that Brown's 2008 and 2017 MRIs were unchanged does not explain why Brown's prior back injury and surgery were related or causally connected to his 2017 work injury. Simply because Dr. Travis opines that the previous back injury and 2017 work injury are related does not make it so. He must have objective medical evidence to support this conclusion.

Based on our review, we hold that the Board did not overlook or misconstrue controlling law and did not commit an error in assessing the evidence so flagrant as to cause gross injustice. *Butler's Fleet Service*, 173 S.W.3d at 631. While Brown injured his back at work and his false representation involved his back condition, KRS 342.165(2)(c) requires substantial evidence of a causal connection between the false representation and the subsequent work injury. The ALJ's findings did not support such a causal connection between the prior back condition and the work injury.

<u>CONCLUSION</u>

For the foregoing reasons, we affirm the Board's decision.

ALL CONCUR.

BRIEF FOR APPELLANT:

Joshua W. Davis
Priscilla C. Page
Louisville, Kentucky

BRIEF FOR APPELLEE LARRY
BROWN:

John W. Spies
Louisville, Kentucky