# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 24, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0051-WC

FORD MOTOR COMPANY                                                     APPELLANT


V.
ON APPEAL FROM COURT OF APPEALS
NO. 2020-CA-0622
WORKERS COMPENSATION BOARD
WC-17-91338


LARRY BROWN;                                                           APPELLEE
HONORABLE JONATHAN R.
WEATHERBY, ADMINISTRATIVE LAW
JUDGE, AND
WORKERS' COMPENSATION BOARD


## MEMORANDUM OPINION OF THE COURT

## REVERSING AND REMANDING

This case is before the Court on appeal as a matter of right[1] by Ford

Motor Company, the Appellant. The Administrative Law Judge dismissed the

compensation claim of Larry Brown, the Appellee, under KRS[2] 342.165(2),

which allows for dismissal of a worker's compensation case if the claimant is

found to have falsely represented his physical condition or medical history. The

Workers' Compensation Board (Board), however, vacated and remanded for

---

[1] Ky. Const. § 115.
[2] Kentucky Revised Statutes.

further fact finding. It believed the causal connection between the false representation and the claimed injury had not been established. The Court of Appeals affirmed the Board.

Ford presents several arguments but foremost is that the Board improperly engaged in fact-finding when it reversed the ALJ's finding of a causal connection between Brown's work injury and a prior, undisclosed injury.[3] We agree. For the following reasons, we reverse the Court of Appeals and reinstate the ALJ's order of dismissal.

## I. Factual and Procedural Background

On February 21, 2017, Brown was working on the assembly line when he bent to pick up a box of screws. Upon lifting the box, he felt a sharp pain from his back to his buttocks. He attempted to continue working but the pain proved too much. He was taken to the medical department at the factory then transferred by ambulance to a hospital where he stayed for a few days. He then left the hospital for a nursing home to recuperate for several weeks. He developed blood clots in his left leg while there, was treated, and eventually released.

He attempted to return to work on August 13, 2017, but there was no job available due to the restrictions placed upon him. He finally returned to a different position on November 14, 2017. He has received an annual raise and

---

[3] The Board affirmed the ALJ's finding that Brown had misrepresented his prior medical history and that Ford had relied on the misrepresentation when it hired him. Brown has not appealed that ruling therefore the evidence demonstrating those facts is superfluous and omitted from our discussion.

works the same number of hours as before although he complains of pain, which allegedly causes him to struggle through his shift. He testified to overusing pain medication just to get through a shift. Brown's claim relates to the time period between August 13th and November 13th.

During discovery, it was revealed Brown had previous back problems that he had not disclosed to Ford when he applied for work in 2016. Medical records demonstrate Brown suffered a back injury in 1999. This injury culminated in a 2003 surgery removing a disc and fusion at L5 and S1. In 2008, working for a different employer, Brown fell, resulting in post-operative changes in the lower lumbar spine. Finally, in 2011, Brown was involved in a vehicle collision and records demonstrate he complained of lower lumbar spine pain. Notes from the treating doctor at the time mentioned Brown had specifically complained of back pain radiating down through his left leg. None of these facts were disclosed to Ford prior to hiring Brown.

Regarding his work injury in 2017, Brown testified his symptoms were "extreme back pain" centered in the "nerves in my buttocks and in my butt, and it goes in my legs, and my left leg seems to want to give out." He also testified to using three prescription drugs—Warfarin, Hydrocodone, and Gabapentin. At Norton Healthcare, on August 28, 2017, Brown complained of lower back pain radiating throughout the lower left of his body. He was diagnosed with lumbar degenerative disc disease and L4-5 radiculopathy.

Dr. Peter Buecker performed an independent medical evaluation on Brown's behalf on November 30, 2017. He diagnosed Brown with spinal

3

stenosis with acute exacerbation from a work-related injury. Though he attributed Brown's harm to the work injury, he noted the previous spinal stenosis from 2003. Dr. Buecker assessed Brown with a DRE Lumbar Category III with 10% impairment. He specifically noted the 2003 surgery was a contributing factor to Brown's impairment. Finally, Dr. Beucker concluded Brown reached maximum medical improvement in August 2017 and that Brown did not have the physical capacity to return to his previous work. He placed restrictions of no lifting more than 25 lbs. and no repetitive twisting, bending, or walking on hard floors.

Dr. Russell Travis performed his independent medical examination on Ford's behalf on June 12, 2017. He found no medical evidence that would explain Brown's symptoms, particularly the complaint he could not walk without support. Dr. Travis concluded at best, Brown may have suffered a lumbar sprain/strain on February 21st, but it left no permanent sequelae. He particularly noted that the MRI images post-injury, compared to MRI images from 2008 and 2011, revealed no changes except normal age-related degeneration.

Dr. Travis also reviewed the findings of Dr. Buecker. He disagreed with the assessment of DRE Lumbar Category III with 10% impairment. Dr. Travis explained per the *Fifth Edition of the American Medical Association Guides*, such a diagnosis was inappropriate as there was no sign of radiculopathy. He further noted Brown's symptom magnification during his examination, and he believed Brown had developed an addiction or dependency on pain medication

4

prescriptions, virtually all of which he thought inappropriate for Brown to be taking.

Finally, Dr. Travis noted video evidence showed Brown walking around his car, as well as entering and exiting it, without the use of a cane or visible signs of struggle. Dr. Travis also noted at a rehabilitation center on June 6, 2017, the physical therapist noted "5/5 Waddell findings." In layman's terms, Brown displayed all behaviors indicative of symptom magnification. From all this, Dr. Travis concluded there is no evidence for an impairment rating except DRE Lumbar Category I 0%. He noted as well the current injury of Brown was "not related in any way" to his 2003 surgery.

The ALJ found Dr. Travis credible, persuasive, and "effectively refuted the opinion of Dr. Buecker with objective medical evidence." Combined with testimony pertaining to the other elements of KRS 342.165(2) not pertinent to our review, the ALJ dismissed the claim as statutorily barred. Brown moved for reconsideration and further findings of fact. While the ALJ did make some additional findings, he reaffirmed his dismissal. Brown appealed to the Board.

The Board affirmed in part, vacated in part, and remanded back to the ALJ. The portion vacated pertained to the finding of a causal connection. The Board believed it was "unclear from the evidence whether there is specific connection between the alleged injury, and the previous back injuries concealed." The Board noted that the ALJ relied upon Dr. Travis' testimony, particularly his MRI image analysis, to find a causal link. But the Board did not believe that sufficient. It stated,

5

> Standing alone, Dr. Travis' finding of no structural change appears to establish that Brown's current complaints are unrelated to his previous injury for which surgery was performed. There appears to be no evidence in the record establishing that Brown sustained any structural lumbar injury on February 21, 2017, while working for Ford. The ALJ failed to provide a finding as to how a possible strain in 2017 is related to a previous structural injury without interval change demonstrated on imaging studies. Dr. Travis acknowledged that Brown might have sustained a sprain or strain, despite his opinions regarding symptom embellishment. This would seem to establish his complaints are unrelated to the previous structural changes which were not disclosed to Ford.

The Board remanded for further fact finding regarding a causal link but directed no particular result.

On remand, the ALJ remained steadfast. In his Remand Opinion and Order, he explained

> the opinion of Dr. Travis supports the causal connection between the false representation and the injury . . . the objective findings referenced by Dr. Travis reveal the Plaintiff's back condition had not changed since his prior undisclosed injury thus making the complaints directly related to the prior undisclosed back condition of the Plaintiff.

The ALJ then cited to our unpublished opinion in *Daniels v. B.R. & D. Enterprises, Inc.,* No. 2005-SC-0652-WC, 2006 WL 734407 (Ky. Mar. 23, 2006) for support. Brown moved for reconsideration, but the petition was denied. He again appealed to the Board.

The Board once again disagreed with the ALJ. It held the MRI image study by Dr. Travis alone did not establish a causal link between the undisclosed back injury and the work injury. The Board stated, "we find the evidence cited by the ALJ does not establish Brown sustained an injury at the fusion site while working for Ford . . . Dr. Travis' diagnosis of a possible lumbar

6

sprain/strain establishes Brown's complaints are unrelated to the previous structural changes, which were not disclosed to Ford." The Board vacated the ALJ's dismissal and remanded for further fact finding but directed no particular result. Ford appealed.

The Court of Appeals affirmed the Board. It did not believe the Board had reweighed or reinterpreted evidence. Instead, the Court of Appeals believed, "[t]he Board was very clear on what additional findings were needed to satisfy the causal connection under the third prong of KRS 342.165(2). When the ALJ failed to identify other evidence in the record to support the causal connection, the Board was compelled to vacate the ALJ's decision." The Court of Appeals concluded that the statute required substantial evidence to support a causal connection, and in so holding stated "[s]imply because Dr. Travis opines that the previous back injury and 2017 work injury are related does not make it so. He must have objective medical evidence to support this conclusion." Ford appealed to this Court as a matter of right.

We now address the merits of the appeal.

## II. Standard of Review

"A party who appeals a finding that favored the party with the burden of proof must show that no substantial evidence supported the finding, *i.e.,* that it was unreasonable under the evidence." *Kroger v. Ligon*, 338 S.W.3d 269, 272 (Ky. 2011) (internal citations omitted). Before the Board, Ford need only have shown "some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did." *Special Fund v.*

7

*Francis,* 708 S.W.2d 641, 643 (Ky. 1986). While the Board does have authority to determine whether an ALJ's finding is "clearly erroneous," KRS 342.285(2)(d), "a finding which can reasonably be made is, perforce, not clearly erroneous." *Special Fund*, 708 S.W.2d at 643.

### III. Analysis

**A. The Roles of the ALJ as Fact Finder and the Board as an Appellate Body**

In a workers' compensation claim, the ALJ is the sole factfinder. He has "the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *Holcim v. Swinford,* 581 S.W.3d 37, 39 (Ky. 2019). He "may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof." *Ligon*, 338 S.W.3d at 272. "Where, as here, the medical evidence is conflicting, the question of which evidence to believe is the exclusive province of the ALJ." *Square D Co. v. Tipton,* 862 S.W.2d 308, 309 (Ky. 1993).

On appeal, "[t]he board shall not substitute its judgment for that of the administrative law judge as to the weight of evidence on questions of fact . . . ." KRS 342.285(2). "The appellate tribunal may not usurp the ALJ's role as fact-finder by superimposing its own appraisals as to weight and credibility or by noting other conclusions or reasonable inferences that otherwise could have been drawn from the evidence." *Miller v. Go Hire Emp. Dev., Inc.*, 473 S.W.3d 621, 629 (Ky. App. 2015). Instead, it may only review for a limited number of scenarios, i.e., the ALJ acted beyond his power; his judgment was procured by

fraud; or he committed an error of law. *Ligon*, 338 S.W.3d at 272-73. An error of law occurs if an ALJ "made a clearly erroneous finding of fact". *Id.* at 273; KRS 342.285(2)(d).

**B. The Board Improperly Reinterpreted the MRI Image Study**

The ALJ found as a fact the prior, undisclosed back injury was causally connected to Brown's work injury. He identified the evidence which he found particularly persuasive, the MRI image study. He explained his rationale as to why that evidence supported his inference, i.e., the extreme symptoms of Brown cannot be explained by any objective medical evidence demonstrating a new injury thus, the symptoms can only be explained in relation to the prior, undisclosed injury.

Had the Board believed this did not constitute substantial evidence and requested only "a sufficient explanation by the ALJ of the basis for the decision," then its order would not be objectionable. *Miller*, 473 S.W.3d at 630 (internal quotation and citation omitted). But the Board did something more which went beyond merely asking the ALJ to provide a factual basis for his decision. Instead, the Board posited an alternate, inconsistent inference drawn from the MRI image study and, based upon that inference, then demanded the ALJ provide more evidence to support his now-rejected inference. In a word, the Board has demanded more than substantial evidence to support a finding of fact made by the ALJ on a contested issue contrary to law. *Ligon*, 338 S.W.3d at 272.

9

This is demonstrated by the Board's first order which stated, "[s]tanding alone, Dr. Travis' finding of no structural change *appears to establish* that Brown's current complaints are unrelated to his previous injury for which surgery was performed." (Emphasis added.) In other words, the Board believed an alternate, inconsistent interpretation of the evidence was more plausible and, on that basis, ruled there was a lack of substantial evidence. It also believed since Brown "might have sustained a strain or sprain" that his complaints were thereby unrelated to the prior injury. The ALJ never made such a finding and if he had, his judgment would be erroneous as it would be contradictory to the finding that the MRI image study established a causal connection. *Miller,* 473 S.W.3d at 634 ("An ALJ's discretion to pick and choose from the evidence does not authorize conflicting findings of fact."). But the Board's order does not suggest contradictory findings are the reason for reversal, merely disagreement as to what the evidence demonstrates.

In its second order, the Board went further and explicitly couched its ruling in the terms of fact finding—"*we find* the evidence cited by the ALJ does not establish Brown sustained an injury at the fusion site while working for Ford . . ." and that "a possible lumbar sprain/strain *establishes* Brown's complaints are unrelated . . .". (Emphasis added.) Thus, in its second order the Board went from merely positing alternative interpretations or noting other possible conclusions from the evidence, to outright making findings of fact contrary to the findings of the ALJ.

10

Suffice it to say, the Board may not hypothecate alternate inferences or interpretations of the evidence to reverse an ALJ's finding of fact. *Miller*, 473 S.W.3d at 629. Nor may it make its own findings. KRS 342.285(2). It must be remembered that by its very definition, substantial evidence is evidence fit to induce conviction in the minds of reasonable men. Nonetheless, "it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an [ALJ's] finding from being supported by substantial evidence." *Ky. State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 307 (Ky. 1972) (internal quotation and citation omitted).

## C. The Court of Appeals' Error on Review

The Court of Appeals did not believe the Board had improperly reinterpreted evidence or was demanding more than substantial evidence upon remand. It thought the Board had merely demanded a substantial factual basis be shown in the first place to support the causal connection. Additionally, it stated, "[s]imply because Dr. Travis opines that the previous back injury and 2017 work injury are related does not make it so. He must have objective medical evidence to support this conclusion." But Dr. Travis gave no such opinion. It was the ALJ who found a causal connection based on Dr. Travis' report. Thus, we do not disagree that a causal connection must be supported by substantial evidence on appeal. But the Court of Appeals has mistakenly inserted an evidentiary standard of "objective medical evidence" that is not found in KRS 342.165(2)(c) therefore, we reject the notion that a causal

11

connection under KRS 342.165(2)(c) must be supported by objective medical evidence.[4]

Said rejection, however, does not contradict our prior opinion that the finding of a causal connection is a "medical question." *Baptist East Hosp. v. Possanza*, 298 S.W.3d 459, 463 (Ky. 2009). That holding came in the specific context of rejecting the argument that KRS 342.165(2)(b) and (c) were capable of combination, thus a causal connection under the latter need only be shown by "proof that the injury would not have occurred because the worker would not have been hired . . ." *Id.* Instead, we held that by listing three elements the General Assembly intended "three distinct requirements." *Id.* Because of that ruling, the ALJ in *Baptist East* had no evidence whatsoever to support a finding of a causal connection because the claimant had failed to disclose a prior lumbar injury but was seeking compensation for a neck injury. *Id.*

Thus, we believe the reasoning of *Daniels v. B.R. & D. Enterprises, Inc.*, although unpublished, is essentially correct—"medical evidence may be a means for proving such a [causal] connection, [but] it is not the sole means for doing so." No. 2005-SC-0652-WC, 2006 WL 734407, at *5 (Ky. Mar. 23, 2006).

---

[4] "We presume when interpreting a statute that the legislature intended for it to mean exactly what it says." *Falk v. Alliance Coal, LLC*, 461 S.W.3d 760, 764 (Ky. 2015) (internal quotation and citation omitted). Because the General Assembly has inserted an objective medical evidence standard in another provision of the Workers' Compensation chapter, its omission in the provision under consideration indicates a deliberate choice not to do so by the legislature. *Cf.* KRS 342.125(1)(d) (requiring objective medical evidence to demonstrate change of disability). *See also* KRS 342.0011(1) (requiring an injury to be proved by "objective medical findings").

To require objective medical evidence to support a causal connection in all cases would import a standard not found in the statutory text.

## IV. Conclusion

The Board reversed a finding of fact of an ALJ not by demonstrating the finding was unsupported by substantial evidence but by advancing its own inferences and highlighting other possible conclusions from the evidence. This the Board cannot do. In affirming, the Court of Appeals improperly applied an evidentiary standard not found in the statute. Therefore, we reverse the Court of Appeals and remand with instructions to reinstate the ALJ's order of dismissal.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Joshua W. Davis
Priscilla C. Page
O'Bryan, Brown & Toner, PLLC

COUNSEL FOR APPELLEE:

John W. Spies
Morgan & Morgan Louisville, PLLC

ADMINISTRATIVE LAW JUDGE:
Hon. Jonathan R. Weatherby

WORKERS' COMPENSATION BOARD:
Michael Wayne Alvey, Chairman